# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

**THREE EXPO EVENTS, L.L.C.**     )     CASE NO. 3:16-cv-00513-D

     )

Plaintiff,     )

     )     **JUDGE SIDNEY A. FITZWATER**

-vs-     )

     )

**CITY OF DALLAS, TEXAS**, *et al.,*     )

     )

Defendants.     )

## PLAINTIFF'S REPLY BRIEF

ROGER ALBRIGHT
(State Bar No. 009 745 80)
rogeralbright@gmail.com
LAW OFFICES OF ROGER ALBRIGHT
3301 Elm Street
Dallas, Texas 75226-2562
(214) 939-9222
(214) 939-9229 (Facsimile)

J. MICHAEL MURRAY
(Ohio Bar No. 0019626)
jmmurray@bgmdlaw.com
BERKMAN, GORDON, MURRAY & DeVAN
55 Public Square, Suite 2200
Cleveland, Ohio  44113-1949
(216) 781-5245
(216) 781-8207 (Facsimile)

Attorneys for Plaintiff

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

I.    RESOLUTION NO. 160308 IS AN UNCONSTITUTIONAL PRIOR RESTRAINT
      ON PLAINTIFF'S EXPRESSION, WHICH DEFENDANTS IMPOSED BECAUSE
      THEY DISAPPROVED OF ITS CONTENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   DEFENDANTS'  IMPOSITION  OF  AN  UNCONSTITUTIONAL  PRIOR
      RESTRAINT ON PLAINTIFF'S EXPRESSION CANNOT BE ABSOLVED BY
      AFTER-THE-FACT JUSTIFICATIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.  DEFENDANTS' UNCLEAN HANDS DEFENSE FAILS. . . . . . . . . . . . . . . . . . . . . . . . 7

      A.    The Doctrine of Unclean Hands Does Not Apply to a First Amendment
            Claim Challenging an Unconstitutional Prior Restraint of Expression. . . . . . . . . 7

      B.    Plaintiff Does Not Have Unclean Hands. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            1.    Plaintiff did not make fraudulent representations to the City. . . . . . . . . . . 9

            2.    The alleged violations of law at Plaintiff's expo do not support
                  application of the doctrine of unclean hands. . . . . . . . . . . . . . . . . . . . . . . 11

                  a.    The pasty issue. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

                  b.    acts of lewdness. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

                  c.    arrests. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IV.   DALLAS'S  ORDINANCE  REGULATING  SEXUALLY  ORIENTED
      BUSINESSES DOES NOT APPLY TO THE CONVENTION CENTER OR
      PLAINTIFF'S TRADE SHOW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

V.    AS APPLIED TO PLAINTIFF'S EXPO, DALLAS'S ORDINANCE REGULATING
      SEXUALLY ORIENTED BUSINESS IS UNCONSTITUTIONAL. . . . . . . . . . . . . . . . 21

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

Page

**CASES**

*Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772 (5th Cir. 1999). . . . . . . . . . . . . . . . . . . . . 7, 8

*Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836 (5th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . 7

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
    508 U.S. 520 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Cinevision Corp. v. City of Burbank*, 745 F.2d 560 (9th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . 23

*City of Los Angeles v. Alameda Books, Inc.*,
    535 U.S. 425 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986). . . . . . . . . . . . . . . . . . . . . . . . . 21

*Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734,
    13 L.Ed.2d 649 (1965). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Gooding v. Wilson*, 405 U.S. 518 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Healthpoint, Ltd. v. Ethex Corp.*, 273 F. Supp. 2d 817 (W.D. Tex. 2001). . . . . . . . . . . . . . . . . 7

*Illusions-Dallas Private Club, Inc. v. Steen*,
    482 F.3d 299 (5th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Int'l Soc. for Krishna Consciousness v. Schrader*,
    461 F. Supp. 714 (N.D. Tex. 1978)(Higginbotham, J.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*McCullen v. Coakley*, 134 S. Ct. 2518 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Millenium Restaurant Group, Inc. v. City of Dallas*,
    191 F. Supp. 2d 802 (N.D. Tex. 2002) (Fish, C.J.). . . . . . . . . . . . . . . . . . . . . 7, 21, 24, 25

*Mitchell Brothers Film Group v. Cinema Adult Theater*,
    604 F.3d 852 (5th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Near v. Minnesota*, 283 U.S. 697 (1931). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
    324 U.S. 806 (1945). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## TABLE OF AUTHORITIES (cont'd)

Page

*Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218 (2015)...............................21, 22

*Shondel v. McDermott*, 775 F.2d 859 (7th Cir. 1985)...................................7

*Siesta Village Market, LLC v. Perry*, No. 3:06-CV-0585,
　　2007 WL 1660791 (N.D. Tex., June 6, 2007) (Fitzwater, J.)......................8

*Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546 (1975)...................4-6, 8, 24

*Thornhill v. Alabama*, 310 U.S. 88 (1940).........................................7

*United States v. O'Brien,* 391 U.S. 367 (1968)....................................24

*United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803 (2000)........................23

*Universal Amusement Company, Inc. v. Vance,* 587 F.2d 159 (5th Cir. 1978)
　　(en banc), *aff'd* 445 U.S. 308 (1980)...................................4, 6-7, 8

*Vaughn v. St. Helena Par. Police Jury*,
　　261 F. Supp. 2d 553 (M.D. La. 2002).........................................16

*Ward v. Rock Against Racism,* 491 U.S. 781 (1989)..................................24

**CONSTITUTIONAL PROVISION**

United States Const., amend. I..............................................1, 4-8, 25

**STATUTES, RULES AND REGULATIONS**

Dallas City Charter, Ch. VI, § 1.................................................3

Dallas City Charter, Ch. VI, § 2.................................................3

Chapter 41A, Dallas City Code....................................3, 4, 17-19, 21-24

Chapter 42, Dallas City Code...................................................17

§ 41A-1 (a), Dallas City Code....................................................18

## TABLE OF AUTHORITIES (cont'd)

Page

§ 41A-2 (3), Dallas City Code. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

§ 41A-2 (4), Dallas City Code. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

§ 41A-2 (5), Dallas City Code. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

§ 41A-2 (23), Dallas City Code. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

§ 41A-2 (31), Dallas City Code. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

§41A-2 (35), Dallas City Code. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

§ 41A-2 (36), Dallas City Code. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

§ 41A-4 (b), Dallas City Code. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

§ 41A-7.1 (a), Dallas City Code. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

§ 41A-7.1 (d), Dallas City Code. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

§ 41A-8 , Dallas City Code. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

§ 41A-9, Dallas City Code. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

§ 41A-10 (e), Dallas City Code. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

§ 41A-10.2 (b), Dallas City Code. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

§ 41A-21, Dallas City Code. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

§ 41A-22, Dallas City Code. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

§ 51-4212 (3)(B), Dallas Development Code. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

§ 51-4219, Dallas Development Code. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

I.   **RESOLUTION NO. 160308 IS AN UNCONSTITUTIONAL PRIOR RESTRAINT ON PLAINTIFF'S EXPRESSION, WHICH DEFENDANTS IMPOSED BECAUSE THEY DISAPPROVED OF ITS CONTENT.**

Tucked in the back of Defendants' Response to Plaintiffs' Motion for a Preliminary Injunction is their rebuttal to the constitutional argument in support of Plaintiff's First Amendment claim that Defendants passed Resolution No. 160308 because they found the ideas and expression at Plaintiff's event objectionable, and therefore, decided to ban it from the city convention center. While they try mightily to defend their action on other grounds, that is at bottom what happened and what this case is about. So we begin there.

Resolution 160308, by purpose and design, was passed to stifle Plaintiff's expression. It declares that "[w]hereas" Plaintiff requested "to contract with the City to hold a three-day adult entertainment expo at the Dallas Convention Center," the City Council, with the support of the Mayor, resolved to direct "the City Manager to not enter into a contract with [Plaintiff] for lease of the Dallas Convention Center." Its message was writ large: Because the subject of Plaintiff's expo was "adult entertainment"– sexually themed material and presentations–Plaintiff would not be permitted to use the City's convention center for its event.

Defendants dub as "specious," Plaintiff's claim that the Resolution on its face targets Plaintiff's expression since the only place in the three-sentence resolution that references the nature of Plaintiff's event is its "whereas" clause. Defendants' Response (Doc. 20) at 43, PageID 500.  But the "whereas" clause is the very place where the target of a resolution or ordinance is often found. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 534-35, 548 (1993) (finding recitals in ordinance's "whereas" clause referring to certain religious practices "inconsistent with public morals, peace or safety," disclosed improper attempt to target Santeria). And here, the target is the adult-oriented nature of Plaintiff's event.

But should there be any doubt, the unabashed comments of the Mayor and the City Council Members who voted in favor of the Resolution supply absolute clarity. They object to the content, theme, and viewpoints expressed at the expo, so they banned it. Plaintiff's Amended Memorandum in Support of Motion for a Preliminary Injunction (Doc. 10) at 3-5, 11, APP. (Doc. 11-6) 217, PageID 125-27, 133, 347. Defendants, therefore, engaged in content-based discrimination when they directed the City Manager not to lease the municipal convention center to Plaintiff.

The law has not changed since Judge Higginbotham, then a judge of this Court, wrote 37 years ago: "No one would seriously urge that a city can legally engage in 'content-based discrimination' in renting its municipal auditorium." *Int'l Soc. for Krishna Consciousness v. Schrader*, 461 F. Supp. 714, 717 (N.D. Tex. 1978). But that is precisely what Defendants have done.

Faced with the constitutional problems raised by their actions, Defendants now offer two defenses.

First, they claim that Plaintiff's entitlement to relief is barred by the doctrine of "unclean hands." As a matter of law, the doctrine of unclean hands does not apply in this case. *Infra* at 4-8. But just as importantly, the allegations of misconduct on which Defendants base their defense are either flat out wrong, *infra* at 9-11, or do not in any way approach the showing of fraud or bad faith the doctrine requires. *Infra* at 9, 11-16.

In their Response to Plaintiff's Motion for a Preliminary Injunction, Defendants, for the very first time, identify grievances with Plaintiff and the operation of its prior exhibition. But these grievances had nothing to do with Defendants' imposition of the prior restraint on expression effected by the resolution they passed. ***Not a word*** was mentioned about them in the ***Resolution itself***, or by its ***proponents*** at the City Council meeting, or by the ***Chief of Police***, or by the ***City Attorney***, or in ***communications*** between Plaintiff and the representatives of the convention center

both before and after the 2015 expo. APP (Doc. 8) at 1, PageID 104, (Doc. 11-6) at 217, PageID 347, (Doc. 11, 11-1, 11-2) at 43-99, PageID 173-229, 177-89, PageID 307-19. The affidavits accompanying Defendants' Response make clear that at the time Defendants passed the resolution, they considered none of the alleged misconduct on which they base their unclean hands defense.

Secondly, Defendants claim they passed the resolution directing the City Manager not to enter into a contract with Plaintiff for its trade show because it is a sexually oriented business regulated by Chapter 41A. That ordinance, they argue, prohibits Plaintiff from leasing the convention center because of the ordinance's location restrictions.. Defendant's Response (Doc. 20) at 14, PageID 471. But Defendants' argument glosses over the absence of any citation to Dallas's ordinances pertaining to sexually oriented businesses in the Resolution, and overlooks the legal opinion and advice rendered to them by their counsel that Chapter 41A simply does not apply.

It also doesn't square with the Mayor's and Council's role as legislators. The City Council and Mayor do not exercise the executive power of the City to enforce ordinances and prosecute violations of them. It is the City Manager who is the "chief administrative and executive officer" with the power and duty "to see that all laws and ordinances are enforced." Dallas City Charter, Ch. VI, §§ 1, 2. In the case of Chapter 41A, enforcement is through criminal prosecution (§ 41A-21) or civil action (§ 41A-22). Adopting a legislative resolution directing the City Manager not to enter into a contract with Plaintiff is not how Chapter 41A is enforced.

The City Attorney explained that Chapter 41A is a land use ordinance that applies to the underlying use of a given facility, which in the case of the convention center is as a venue for trade shows. He affirmed that the ordinance regulates use of the land itself, not the temporary events occurring there.

The City Attorney also explained in response to questioning by Council Member Kingston

3

that even if some basis existed for applying Chapter 41A to the convention center, its application to ban Plaintiff's event from the city-owned venue would conflict with First Amendment precedent since there is only one city-owned convention center, and no alternative venue where Plaintiff's event can be held.

## II.    DEFENDANTS' IMPOSITION OF AN UNCONSTITUTIONAL PRIOR RESTRAINT ON PLAINTIFF'S EXPRESSION CANNOT BE ABSOLVED BY AFTER-THE-FACT JUSTIFICATIONS.

Defendants offer after-the-fact justifications for their refusal to allow Plaintiff to use the convention center for its adult-oriented expo. They tell us, for the first time in their Response, Plaintiff breached provisions of its agreement with the convention center, violated city and state laws governing public nudity and lewdness, and "fraudulently misrepresented" the entity that entered into the contract with the convention center in connection with its three-day expo in August 2015.  But none of these after-the-fact justifications or instances of alleged past misconduct in any way alters the unconstitutionality of Defendants' action or Plaintiff's entitlement to relief where, as here, "public officials [have] forbidden [plaintiff's] use of [a] public place[] to say what [it] wanted to say." *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546 (1975).

*Southeastern Promotions* and *Universal Amusement Company, Inc. v. Vance,* 587 F.2d 159, 165 (5th Cir. 1978) (en banc), *aff'd* 445 U.S. 308 (1980) control the analysis and the result.

*Southeastern Promotions* involved similar circumstances. There, the Plaintiff applied to the directors of Chattanooga, Tennessee's municipal auditorium for permission to present "the controversial rock musical 'Hair,'"[1] for a six-day run. 420 U.S. at 547-48. The Board overseeing the auditorium refused to permit Plaintiff to use the auditorium for its production of "Hair," finding its

_____

[1]  A footnote to Justice White's dissent contains the district court's candid description of the musical, including its scenes of nudity and simulated sexual intercourse. *Id.* at 566 n.1.

4

use "was not in the best interest of the community." *Id.* at 549. That, the Court found, was an unconstitutional prior restraint. It wrote:

> The elements of prior restraint identified in *Cantwell* [*v. Connecticut*, 310 U.S. 296 (1940)] and other cases were clearly present in the system by which the Chattanooga board regulated the use of its theaters. One seeking to use a theater was required to apply to the board. The board was empowered to determine whether the applicant should be granted permission–in effect, a license or permit– on the basis of its review of the content of the proposed production. Approval of the application depended upon the board's affirmative action. Approval was not a matter of routine; instead, it involved the "appraisal of facts, the exercise of judgment, and the formation of an opinion" by the board. The board's judgment effectively kept the musical off stage. Respondents did not permit the show to go on and rely on law enforcement authorities to prosecute for anything illegal that occurred. Rather, they denied the application in anticipation that the production would violate the law. *See New York Times Co. v. United States*, 403 U.S. 713, 735-738, 91 S.Ct. 2140, 2152, 29 L.Ed.2d 822 (1971) (White, J., concurring).

*Id.* at 554-55.

That is exactly what happened here. Defendants, employing no objective standards, appraised the facts, exercised judgment, formed an opinion, and passed a resolution banning Plaintiff's use of the convention center for its 2016 adult entertainment expo, "on the basis of its review of the content" of the proposed expo. As preserved on the public record of the City Council meeting at which Resolution 160308 was approved, Defendants based their refusal to let Plaintiff use the convention center on their disapproval of its content. They exercised "unbridled discretion" over the convention center's use and engaged in censorship of Plaintiff's expression–a classic prior restraint. *Id.* at 553.

Defendants now offer post hoc justifications for violating Plaintiff's First Amendment rights. The Defendants in *Southeastern Promotions,* in fact, did the same thing. They claimed that the group nudity and simulated sex in "Hair," would violate state statutes and city ordinances, and therefore, justified their refusal to allow the Plaintiff to use the municipal auditorium for its production. *Id.* at 550-51. The district court held a three-day hearing, and presented the issue of the obscenity vel non

of "Hair," to an advisory jury that concluded the musical was obscene. *Id.* The district court

concurred and determined the production contained conduct that would violate municipal and state

laws criminalizing public nudity and obscenity. *Id.* at 550-51.

But the Supreme Court found the after-the-fact finding that the musical was obscene (an issue

the Court did not reach) did not cure the Board's unconstitutional prior restraint–especially given

the fact that "a system of prior restraint 'avoids constitutional infirmity only if it takes place under

procedural safeguards designed to obviate the dangers of a censorship system.' *Freedman v.*

*Maryland,* 380 U.S. 51, 58, 85 S.Ct. 734, 739, 13 L.Ed.2d 649 (1965)." [2] *Id.* at 552, 560. As the

Court wrote:

> The presumption against prior restraints is heavier–and the degree of protection
> broader–than against limits on expression imposed by criminal penalties. Behind the
> distinction is a theory deeply etched in our law: a free society prefers to punish the
> few who abuse rights of speech after they break the law than to throttle them and all
> others beforehand. It is always difficult in advance to know what an individual will
> say, and the line between legitimate and illegitimate speech is often so finely drawn
> that the risks of freewheeling censorship are formidable.

*Id.* at 559.

Under *Southeastern Promotions*, then, Plaintiff's supposed breaches of contract provisions,

fraudulent misrepresentations about its name, and the violations of state statutes and city ordinances

that Defendants claim occurred in connection with its August 2015 expo, in no way excuse or

palliate Defendants' imposition of a prior restraint on Plaintiff's speech.

That brings us to another reason why Defendants' post-hoc justifications for banning Plaintiff

from the convention center play no role in this case. Instances of past misconduct cannot justify a

restraint of future expression. *Vance* determined that prohibiting "future conduct that may fall within

the purview of the first amendment" based on past or present instances of unprotected conduct was

---

[2] This same deficiency exists here as well.

precisely the practice condemned in *Near v. Minnesota*, 283 U.S. 697 (1931). 587 F.2d at 165. *See also, Millenium Restaurant Group, Inc. v. City of Dallas*, 191 F. Supp. 2d 802, 807 (N.D. Tex. 2002) (Fish, C.J.).

Defendants' argument that instances of past misconduct on Plaintiff's part can support a restraint of its future expression, was expressly rejected in *Vance*. The City cannot justify banning Plaintiff from the convention center as a forum for presentation of its expression in May 2016, on the basis of misconduct allegedly occurring at Plaintiff's August 2015 event.

## III.    DEFENDANTS' UNCLEAN HANDS DEFENSE FAILS.

The cases on which Defendants base their "unclean hands" defense, all involve its application in cases between private litigants. *Healthpoint, Ltd. v. Ethex Corp*., 273 F. Supp. 2d 817, 822 (W.D. Tex. 2001) (trademark infringement and disparagement); *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 807 (1945) (breach of contract and patent infringement); *Mitchell Brothers Film Group v. Cinema Adult Theater*, 604 F.3d 852 (5th Cir. 1979) (rejecting application of the doctrine in a copyright infringement action on the ground that the material was allegedly obscene).  The doctrine is an equitable one that militates against granting injunctive relief to a party who has engaged in–not simple negligence or breach of contract–but serious misconduct amounting to fraud or bad faith. *Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 841 (5th Cir. 2004); *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 796 (5th Cir. 1999).

### A.    The Doctrine of Unclean Hands Does Not Apply to a First Amendment Claim Challenging an Unconstitutional Prior Restraint of Expression.

As a general matter, First Amendment precedent "suggests a definite hostility into inquiring into a plaintiff's misconduct when he is seeking to vindicate freedom of speech." *Shondel v. McDermott*, 775 F.2d 859, 869 (7th Cir. 1985) *citing Thornhill v. Alabama*, 310 U.S. 88 (1940);

*Gooding v. Wilson*, 405 U.S. 518 (1972) ("allow[ing] a person whose own conduct may be punished without violating the First Amendment to challenge the statute under which he was punished on the ground that it might in another case be interpreted to reach privileged conduct"). Judge Posner expanded on the reason why application of the doctrine of unclean hands is dubious in the First Amendment context:

> The waiver by the Supreme Court in *Elrod* of proof of irreparable harm in preliminary-injunction cases under the First Amendment rests on the view that the balancing of equities that is undertaken in a conventional equity case is out of place in dealing with rights so important as the modern Supreme Court considers the rights of expression to be. Equitable defenses such as unclean hands may also have more limited play in free-speech cases than elsewhere.

*Id.* at 869. *See Siesta Village Market, LLC v. Perry*, No. 3:06-CV-0585, 2007 WL 1660791 (N.D. Tex., June 6, 2007) (Fitzwater, J.) (observing equitable estoppel and unclean hands are "not proper defenses to constitutional claims").

As set forth above, *supra* at 4-7, after-the-fact justifications cannot cure the imposition of a prior restraint, *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559, nor can instances of past misconduct justify a restraint of future expression. *Vance,* 587 F.2d at165. But that is the essence of Defendants' unclean hands defense. It, therefore, has no place in evaluating Plaintiff's First Amendment claims.

### B.     Plaintiff Does Not Have Unclean Hands.

"A party is said to possess 'unclean hands' if it is guilty of conduct involving fraud or bad faith." *Alcatel USA, Inc.*, 166 F.3d at 796.

Defendants base their unclean hands defense on three grounds: Plaintiff allegedly made "fraudulent misrepresentations," Defendants' Response (Doc. 20) at 22-24, PageID 479-81; allowed "criminal activity to occur at Exxxotica," *id.* at 24-25, PageID 481-82; and "violat[ed] [the]

8

agreement with the City." *Id.* at 25-27, PageID 482-84.

As an initial matter, by the doctrine's own terms, simple breach of an agreement without some showing of fraud or bad faith, does not suffice to invoke the doctrine. Defendants claim that Plaintiff violated its agreement with the City; they do not argue it did so in bad faith or fraudulently. Defendants' Response (Doc. 20) at 25-27, PageID 482-84. Those supposed breaches, which Plaintiff maintains were not breaches at all, do not satisfy the basic requirement of the defense.

That leaves Defendants' allegations that Plaintiff engaged in fraud and permitted criminal activity to occur at the expo.

### 1. Plaintiff did not make fraudulent representations to the City.

Here are the facts.

In March 2014, Plaintiff began discussions with the convention center staff, which continued throughout the year, exploring the convention center as a potential venue for its exhibition. APP. (Doc. 11) at 14-19, PageID 144-49. Erika Bondy, the convention center's sales coordinator, was its point person. On August 1, 2014, Ms. Bondy sent an email to J. Handy, Plaintiff's Director, which read:

> Is the Exotica Texas, LLC a dba underneath Three Expo Events or should it have its own sales account with us? Right now we have you under Three Expo.

Defendants' App. (Doc. 21-2) at 00128, PageID 603. Handy responded:

> Three Expo Events is a hired trade show management company that runs the Dallas event, owned by ***Exotica Dallas, LLC.***
>
> You can keep it under 3XE if you like.

*Id.* at 00127-28, PageID 602-03 (emphasis added). Ms. Bondy responded:

> We'll keep it under Three Expo since you don't mind.

*Id.* at 00127, PageID 602.

Roughly a week and a half later, Shannon Shadday, the convention center's contract administrator, sent Handy a proposed contract. *Id.* at 00143-46, PageID 618-21. In response, Handy wrote to Bondy, the following day:

> Hey there - I got the contract back, reread through my emails, and think I got confused.
>
> We definitely need the contract written to ***Exotica Texas, LLC***. In the last email exchange I thought you were just keeping it under 3XE on your end, which is fine, but legally Exotica Texas, LLC is the company contracting the space. Three Expo Events is just hired to produce them.
>
> Sorry for the confusion.

*Id.* at 00143, PageID 618 (emphasis added). Bondy said she would "fix the info" in the system and "reissue." *Id.* The contract was reissued accordingly. APP. (Doc. 11-1) at 101-08, PageID 231-38.

The problem is that Handy was mistaken about the entity's name in his second email to Bondy. While he correctly identified the entity's name as "***Exotica Dallas, LLC***" in his original email to Ms. Bondy, he incorrectly identified it as "***Exotica Texas, LLC***" in his subsequent one. Defendants' App. (Doc. 21-2) at 00127-28, PageID 602-03; 00143, PageID 618. The source of that confusion was based on the fact that the LLC had not yet been formed at the time of Handy's initial discussion with the Convention Center, and both "Exotica Dallas" and "Exotica Texas" had been considered as potential names. APP. (Doc. 29) at 229, PageID 1690. When a name check was performed in the course of setting up the LLC, there appeared to be an issue with using the name, "Exotica Texas," so the LLC was formed under the name of "Exotica Dallas, LLC,"the name Handy had originally provided to Ms. Bondy. *Id.* That entity was properly formed and is registered with the Texas Secretary of State. APP. (Doc. 29) at 229-30, 237-46, PageID 1690-91, 1698-1707. Supplying the name, "Exotica Texas, LLC," rather than "Exotica Dallas, LLC," for use on the contract was a simple mistake. Defendants have not identified any prejudice from the mistake–for there was none.

10

The certificate of insurance required by ¶ 22 of the contract, APP. (Doc. 11-1) at 103-04, PageID 233-34, sent to Ms. Shadday on July 31, 2015 and verified by her affidavit lists the insured as "Three Expo Events LLC & ***Exotica Dallas, LLC*** dba Exotica Texas." Defendants' App. (Doc. 21-1) at 0090, PageID 564; (Doc. 21-2) at 00149,PageID 624 (emphasis added).  The final payment for the event was drawn on a check that listed Exotica Dallas, LLC, as the payor. APP. (Doc. 29) at 230, 241, Page ID 1691, 1702.

Plaintiff made no fraudulent misrepresentation to Defendants. Had defense counsel's paralegal's search included, "Exotica Dallas," a name that had been referred to in communications between Plaintiff and convention center staff, Defendants' Response (Doc. 20) at 4, PageID 461, in her online search of the corporate records of Texas and Delaware, the innocuous error would have been obvious. Defendants' App. (Doc. 21-15) at 00642, PageID 1117.  Their accusation is baseless.

> **2.** **The alleged violations of law at Plaintiff's expo do not support application of the doctrine of unclean hands.**

The evidence Defendants offer in support of their unclean hands defense hits several themes: (1) women wore pasties rather than tops that covered their breasts from a point immediately above the top of the areola, (2) acts of public lewdness were performed at the event, and (3) arrests of two attendees for disorderly conduct and arrests of nine men responding to fake ads placed by the Dallas Police Department were made.

> **a.** The pasty issue

John Johnson, the Assistant Director of the convention center, testified that he was present "in various locations" at the convention center for the entirety of Plaintiff's expo. Defendants' App. (Doc. 21-1) at 00046, PageID 520. He confirmed that he saw "numerous women wearing only pasties." *Id.* at 00047, PageID 521. Johnson did not apparently see that as a problem. Neither he, nor

11

his staff, nor members of the Dallas Police Department raised any objections to the performers'

costuming: ***not*** in meetings before the expo when Plaintiff stated there would be no nudity but that

performers would wear pasties and g-strings, ***not*** during the first night of the expo when Johnson and

Dallas PD Lieutenant Keough walked through the expo after it was under way and observed

exhibitors and participants wearing only pasties and g-strings, ***nor after*** the event concluded. APP.

(Doc. 29) at  231, 232, 233-34, Page ID 1692, 1693, 1694-95. Instead, when the convention

concluded, Johnson and his staff offered Plaintiff potential dates for a return show in 2016. *Id.* (Doc.

21-1) at 00051, 00085, PageID 525, 559.

 The absence of any objection can be explained by the fact that the women's garb was no

surprise to any of the convention center staff or police officers. Two days before the event was to

begin, Ms. Bondy emailed Plaintiff an "awesome article," which reported:

> Patrons can attend in whatever clothing they want, but Gentry said to expect a lot of
> skin. No overt nudity is allowed, he said, but that only requires genitals and nipples
> to be covered. "You can walk around at this convention in a g-string and little black
> X's over your nipples and you're not nude," he said. Does that mean you can't take
> pictures? Absolutely not, according to all sources. In fact, the stars *want* you to snap
> a few.

APP. (Doc. 29) at 233, 250, 255, PageID 1694, 1711, 1716 (emphasis *sic*).

Moreover, Johnson had forwarded to Plaintiff, an email from J.C. Keough, Lieutenant of

Police, Vice Unit, of the Dallas Police Department with the Texas Penal Code provisions pertaining

to Public Lewdness, Indecent Exposure, and Obscenity.  Defendants' App. (Doc. 21-1) at 00060-81,

PageID 534-555. Those laws prohibit "exposure of the anus or any part of the genitals" and certain

sexual acts. *Id.* at 00068, PageID 542. They do ***not*** require more covering than pasties and g-strings.

And no one from the City suggested that pasties and g-strings were objectionable or violated any of

those laws. APP. (Doc. 29) at 231-32, PageID 1692-93.

In fact, during a meeting with ten representatives of the City, including six members of the Dallas Police Department and two Assistant City Attorneys, two days before the event, the police were specifically asked about what would happen in the event a performer's pasty fell off, revealing her bare breast. *Id.* at 232-33, 248-49, PageID 1693-94, 1709-10. The police told Plaintiff they expected immediate action to be taken to cover up the exposed nipple and areola. *Id.* Importantly, they did not say that pasties were an unacceptable covering.

Had anyone raised any objection, Plaintiff would have complied with requests to require more coverage. *Id.* at 233, PageID 1694. No one did. *Id.* at 234, PageID 1695.

b.  acts of lewdness

Defendants have offered the affidavits of three Dallas Police Officers[3] who attended the event as  undercover officers, and performed hours of surveillance at the event. Defendants' App. (Doc. 21-15) at 00619, 00623, 00626, PageID 1094, 1098, 1101. Each stated their assignment "was to look for evidence of prostitution, human trafficking, and other violations of law" at Plaintiff's event. *Id.* at 00620, 00624, 00627, PageID 1095, 1099,1102. Deputy Chief Vernon Hale attested: "Vice officers were assigned to attend portions of Exxxotica Dallas. They did not make any arrests or report having witnessed any crimes during their time at Exxxotica Dallas." Defendants' App. (Doc.

---

[3]  DeWees, a DPD officer for 26 years,  Officer Dodd (19 years on the force), Officer White (24 years on the force) as well as 27-year old Taryn Mays, a former employee of New Friends New Life, complained that no one checked their identification to verify they were over 18 years of age. *Id.* at 00620, 00623-24, 00626-27, 00629,  PageID 1095, 1098-99, 1101-02,1104. Their affidavits reflect they are all well over the age of majority.

Ms. Mays and her companions, employees of New Friends New Life who attended Plaintiff's trade show as part of their job, stated they saw a young woman who appeared to them to be under eighteen, *id.* at 00630, 00634, 00638,  PageID 1105, 1109, 1113, but they provided no testimony regarding whether the young woman's ID had or had not been checked. In fact, in advance of the event, Plaintiff requested that "2 more security guards" be added "specifically to check ID's at the entrance." APP. (Doc. 29) at 234, 258-59, PageID 1695, 1719-20.

21-3) at 00158, PageID 633. The Dallas Chief of Police told the Mayor and the City Council the same thing at the February 10, 2016 City Council meeting. APP (Doc. 11-6) at 217. Assistant Director Johnson, who was present for the entirety of the event, stated that if he had recognized any violations of law, he would have addressed them. Defendants' App. (Doc. 21-1) at 00046, PageID 520. He identified none. APP.(Doc. 29) at 235, PageID 1696.

Plaintiff placed signs at the front entrance and in various places in and around the expo's exhibit space, reminding exhibitors and advising attendees about the rules governing the event, including the strict prohibition against nudity and sexual activity. *Id.* at 234-35, 266, Page ID 1652-53, 1727.

The evidence on which Defendants rely to support their claim that Plaintiff permitted violations of Texas laws criminalizing public lewdness is comprised of a handful of video clips of unknown provenance supposedly taken during Plaintiff's Dallas event. Defendants' App. (Doc. 21-1) at 00042, PageID 516. The clips are not authenticated, nor do Defendants offer any information about who produced them or how they obtained them or where they came from. The only testimony Defendants offer by way of tying the footage to Plaintiff's event is that of Assistant Director Johnson, who states that he recognizes the convention center in some of the clips. *Id.* at 48-51, PageID 522-25.

Some time "after the Dallas City Council voted on the resolution which is the basis of Plaintiff's lawsuit," Defendants showed four of the clips to two of the three undercover officers who were assigned to the event and three additional members of the Dallas Police Department, who did not attend it. *Id.* at 00620, PageID 1095; 00627, PageID 1102; Deputy Chief Sherwin, *id.* (Doc. 21-4) at 196, 197, PageID 671, 672; Deputy Chief Hale, *id.* (Doc. 21-3) at 00158, PageID 633; Assistant Chief Blankenbaker, *id.* at 154, PageID 629. The two undercover officers who spent hours of

14

surveillance at the three-day event confirmed they had not observed any conduct like that depicted on the four unauthenticated video clips at Plaintiff's event. *Id.* at 00620, PageID 1095; 00627, PageID 1102. For his part, Officer Dewees described the expo as "primarily a place for vendors of sexually oriented products to sell their wares." *Id.* at 00620, PageID 1095.

The take-away is that three veteran members of the Dallas Vice unit who were specifically assigned to attend Plaintiff's event to look for evidence of criminal activity, observed none during their surveillance of the three-day event. The isolated scenes depicted in the video clips unearthed after Defendants passed the resolution do not in any way suggest that Plaintiff acted fraudulently or in bad faith.

c. arrests

Deputy Chief Sherwin attached two arrest reports to his affidavit: one for an attendee who punched a protestor after being called a child molester, and another for an attendee who was "causing a disturbance." *Id.* at 201, 204, PageID 676, 679. Neither Sherwin nor the reports suggest that Plaintiff had any involvement with, knowledge of or in any way caused the disturbances leading to the arrests. The arrest reports do illustrate, however, that when Dallas police officers saw what they viewed as criminal activity, they enforced the law by arresting violators. Yet, these were the only arrests made.

Even more attenuated is the evidence offered by Deputy Chief Hale. Attached to his affidavit were arrest reports of nine men who responded to two ads posted on backpage.com by the Dallas Police Department as part of a sting operation targeting prostitution. *Id.* (Doc. 21-3) at 00157, Page ID 632; App.(Seal) at 35-41. Hale explained that the Dallas Police Department chose to refer to Plaintiff's event in its fake ads. *Id.* ("Exxotica (*sic*) Specials," "$$$$ HOT Latina Iin (*sic*) TOWN for the EXXXOTICA Weekend $$$$ -18"). He offered no information about whether it was a

15

customary practice of the Dallas Police to reference events at the convention center or  events at

other venues, when placing ads "designed to attract 'Johns.'" The arrest reports document that each

of the men arranged to meet the undercover officer in a room at the Hampton Inn & Suites at 3052

N. Stemmons Frwy. *Id.* at 00162, PageID 637.  The reports do not mention Plaintiff's event, much

less evidence any culpability on Plaintiff's part in connection with the arrests.

The court's observation about the evidence offered in support of the parish's unclean hands

defense in *Vaughn v. St. Helena Par. Police Jury*, 261 F. Supp. 2d 553, 566 (M.D. La. 2002) rings

true here:

> [T]he Parish argues that the Plaintiffs should not benefit from injunctive relief
> because certain of their activities make it clear that they are not entitled to it. The
> Parish urges that only one who comes to the courts with "clean hands" should benefit
> from equitable relief. The Parish claims that the Vaughns have been less than
> forthcoming with information regarding their past and present employees. It also
> claims that they allowed completely topless dancing and contact between dancers and
> patrons in the Oak Ridge Lounge. The Court is not convinced by the evidence
> presented by the Parish that the injunction should be dissolved. For the most part, the
> Parish's claims seem simply mean-spirited. For example, it points out that the
> Plaintiffs claimed in court submissions to have spent $50,000 on their property.
> Meanwhile, the Parish breathlessly reveals, the title transfer document shows that
> they actually spent only $45,000. This kind of quibbling is not worth the Court's
> time. The Court has already noted that it appears that the dancers sometimes danced
> without pasties and that such was a violation of the ordinance existing before the
> ordinance whose enforcement is now enjoined repealed it. The doctrine of unclean
> hands allows a court to bar recovery when a party asserting an equitable claim against
> another can be shown to have engaged in fraud or bad faith behavior with that
> person. *Alcatel U.S.A., Inc. v. DGI Technologies, Inc.*, 166 F.3d 772, 796 (5th
> Cir.1999). Even if the dancers at the Oak Ridge Lounge performed topless, this is not
> the sort of behavior the doctrine is meant to address.

## IV.    DALLAS'S ORDINANCE REGULATING SEXUALLY ORIENTED BUSINESSES DOES NOT APPLY TO THE CONVENTION CENTER OR PLAINTIFF'S TRADE SHOW.

The Dallas Convention Center is located in the zoning district designated " CA-1A," or

Central Area-1A. http://gis.dallascityhall.com/zoningweb/.  The convention center operates under

a certificate of occupancy as a trade center.[4]  It serves as a place where people can convene for a conference, meeting, exhibition, rally, or other type of gathering focused on a particular business, area of interest, hobby, or entertainment.  It is that use–not the subject of the particular event inside its conference rooms and exhibition halls–that controls which ordinances pertain to it for purposes of regulating the use of the facilities.

The use of the venue is not defined by or based on the nature of the temporary events it hosts. It does not become an automobile dealership one week and a financial counseling agency the next, and a community college several weeks later, because it has leased space to those entities for their various events. APP (Doc. 11) at 35, PageID 165. So when the convention center contracts with Mecum Auto Auction to serve as the site of the popular car auction, *id.* at 31, 37, PageID 161, 167, no one needs to apply to City Council for a special use permit because auto auctions are not otherwise permitted in the CA-1A zone. §§ 51-4212 (3)(B); 51-4219, Dallas Development Code. And when the convention center contracts with Mary Kay Cosmetics to hold its annual seminar, APP (Doc. 11) at 31, PageID 161, it does not become a home solicitation business, requiring registration as such under Dallas's ordinances regulating those businesses. Chapt. 42, Dallas City Code.

The materials and presentations addressing sexual issues at Plaintiff's three-day expo, therefore, do not convert the convention center into a sexually oriented business subject to Chapter 41A's regulation of such businesses.

Analysis of the ordinance itself demonstrates its inapplicability to Plaintiff's three-day event. The ordinance's avowed purpose is "to prevent the continued concentration of sexually oriented businesses within the city; and to minimize the deleterious effects of sexually oriented businesses

---

[4]    The Convention Center's Certificate of Occupancy can be accessed at https://developdallas.dallascityhall.com/download.aspx?PosseObjectId=69642425.

both inside such businesses and outside in the surrounding communities." Its preamble expressly states that the ordinance is not intended to "impose a limitation or restriction on" sexually oriented expression, nor "to restrict or deny access by adults" to that expression. § 41A-1 (a), Dallas City Code; Defendants' App. (Doc. 21-6) at 00679, PageID 1154. Measuring Plaintiff's expo against the ordinance's statement of purpose and intent demonstrates the flaws in Defendants' position.

First, the event at issue here is transitory; it lasts only three days. The expo is slated to open on Friday, May 20, 2016, and is to be packed up and out of the convention center two days later, on May 22, 2016. Application of the ordinance to the expo, therefore, in no way serves Chapter 41A's objective of preventing "the continued concentration of sexually oriented businesses within the city."

Secondly, at the February 10, 2016 council meeting at which the resolution was passed, the Dallas Chief of Police reported that at last year's expo, the undercover officers dispatched by the Dallas Police Department to monitor the event observed no criminal activity, including no violations of Texas obscenity laws.[5] *See also* Affidavit of Deputy Chief Hale, Defendants' App. (Doc. 21-3) at 00158, PageID 633. The Chief also confirmed there had been no increase in crime related to the event in the vicinity surrounding the convention center and directly disavowed receiving any reports of an increase in prostitution associated with the event.[6] Thus, application of the ordinance to the expo also fails to serve Chapter 41A's avowed purpose of "minimiz[ing] the deleterious effects of sexually oriented businesses both inside such businesses and outside in the surrounding

---

[5] The Chief's statements can be found at approximately 3:17:00 on the audio recording of the February 10, 2016 Council meeting.

[6] Plaintiff actively participated and met with the Dallas Police Department, including members of its vice unit, and the City Attorney in the run up to the event to assure compliance with all laws and to review its procedures for confirming that only adults would be admitted to the event. APP. (Doc. 11) at 19, PageID 149. No one ever suggested that Chapter 41A might apply to Plaintiff's trade show. APP.(Doc. 29) at 231, PageID 1649.

communities."

And finally, the ordinance expressly declares that its intent is neither to limit or restrict the content of "communicative materials or performances, including sexually oriented materials or performances," nor "to restrict or deny access to adults" to such materials. But that is exactly the intent and purpose of Defendants' attempted application of the ordinance to Plaintiff's expo. Plaintiff's Amended Memorandum in Support of Motion for a Preliminary Injunction (Doc. 10) at 3-5, 11, PageID 125-27,133; APP (Doc. 11-6) at 217, PageID 347. They cannot wriggle free of their content-based purpose proclaimed at the February 10, 2016 City Council meeting or of the content-based language of the Resolution that nowhere mentions Chapter 41A.

A look at the nuts and bolts of the ordinance also demonstrates its inapplicability here.

The ordinance defines "Sexually Oriented Business" to mean:

> an adult arcade, adult bookstore or adult video store, adult cabaret, adult motel, adult motion picture theater, escort agency, nude model studio, or other commercial enterprise the primary business of which is the offering of a service or the selling, renting, or exhibiting of devices or any other items intended to provide sexual stimulation or sexual gratification to the customer.

§ 41A-2 (31), Dallas City Code, Defendants' App. (Doc. 21-6) at 00682, PageID 1157. *See* § 41A-2 (3), Dallas City Code, Defendants' App. (Doc. 21-16) at 00680, PageID 1155 (defining "Adult Bookstore"); §§ 41A-2 (4), (5), Dallas City Code, *id.* at 00680, PageID 1155 (defining "Adult Cabaret"); § 41A-2 (23), Dallas City Code, *id.* at 00682, PageID 1157 (defining "Nude Modeling Studio).

As the City Attorney advised Council, the ordinance regulates brick and mortar retail businesses that represent fixed land uses in the City, not temporary events or expos at the convention center. An "Adult Bookstore" and "Adult Cabaret" are both described as "a commercial establishment," reinforcing the City Attorney's view that Chapter 41A applies to brick and mortar

19

retail businesses, or "commercial establishments," that locate in the City of Dallas, not a three-day

trade show at its convention center. Neither the convention center itself nor Plaintiff's expo fits any

of these definitions. It is a convention that features exhibits, artistic presentations, and educational

seminars promoting healthy sexual lifestyles and adult recreation.  APP. (Doc. 11) at 14, 17, 20,

PageID 144, 147, 150. By the ordinance's own terms, the expo is not a "sexually oriented business."

The structure and operation of the ordinance's provisions likewise make clear that it regulates

land uses by brick and mortar businesses offering adult entertainment, not trade shows at the

convention center. Application of a number of the provisions of the ordinance to Plaintiff's three-day

event makes no sense. *See* e.g., § 41A-8, Defendants' App. (Doc. 21-16) at 00688, PageID 1163

(providing that license expires after one year of issuance); §41A-2 (35), *id.* at 00683, PageID 1158

(defining "substantial enlargement" of a sexually oriented business); § 41A-2 (36), *id.*  (defining

"transfer of ownership or control" of a sexually oriented business); § 41A-4(b), *id.* at 00684, PageID

1159 (requiring sketch or diagram of the premises with application for license); § 41A-7.1 (a), (d),

(g), *id.* at 00687, PageID 1162 (requiring licensee to maintain on the premises,  "a current

registration card or file" in which it must place a criminal history report of an entertainer "not later

than 90 days" after employing him or her and to retain all entertainer records ***on the premises of the***

***sexually oriented business*** "for at least 90 days" after termination of the entertainer's employment);

§ 41A-9, *id.* at 00688, PageID 1163 (directing the chief of police to suspend a license "for a period

not to exceed 30 days" if licensee has violated or is not in compliance with the ordinance's

provisions); § 41A-10 (e), *id.* at 00689, PageID 1164 (providing that license revocation will

"continue for one year"); § 41A-10.2(b), *id.* (precluding chief of police from enforcing suspension

or revocation of a license "before the 11th day after the date of written notice" of the suspension or

revocation).

## V.   AS APPLIED TO PLAINTIFF'S EXPO, DALLAS'S ORDINANCE REGULATING SEXUALLY ORIENTED BUSINESS IS UNCONSTITUTIONAL.

Even if some argument could be fashioned in support of applying Chapter 41A to Plaintiff's expo, that application would be unconstitutional. *See Millenium Restaurants Group, Inc. v. City of Dallas, Texas*, 191 F.Supp.2d 802, 807-08 (N.D. Tex. 2002) (Fish, C.J.) (application of Chapter 41A to revoke adult cabaret's license operated as unconstitutional prior restraint).

Chapter 41A regulates sexually oriented businesses. In defining the businesses it regulates, the ordinance refers to the expression they offer or display. A law that draws such distinctions based on the content of expression is subject to strict scrutiny–a principle reaffirmed last term in *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2224 (2015).

The Supreme Court, however, recognized an exception to this general rule in cases prior to *Reed* (an exception which Plaintiff maintains is no longer tenable after *Reed*) that permitted courts to evaluate content-based ordinances regulating adult businesses under less exacting intermediate scrutiny if they were predicated–not on the suppression or restriction of the expression offered by those businesses–but on the adverse secondary effects associated with them. *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41 (1986); *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 434 (2002).

Under this line of authority, the ordinance's predominant purpose determines the level of scrutiny. *Alameda Books, Inc.*, 535 U.S. at 434;  *Illusions-Dallas Private Club, Inc. v. Steen*, 482 F.3d 299,  308 (5th Cir. 2007). A court must, therefore, "verify that the 'predominate concerns' motivating the ordinance 'were with the ***secondary effects*** of adult [speech], and ***not with the content*** of adult [speech].'" *Alameda Books, Inc.*, 535 U.S. at 440-41 (2002) (Kennedy, J.) citing *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47(1986) (emphasis added). If the predominate

concern of the regulation is based on the content of the expression and not its secondary effects, it is "considered presumptively invalid and subject to strict scrutiny." *Alameda Books*, 535 U.S at 434.

The record before the Mayor and City Council showed that the expo caused no adverse secondary effects. The Chief of Police did not equivocate: there was no criminal activity at the expo, there was no criminal activity of a sexual nature or any other nature related to it in the vicinity, and the Dallas Police Department did not receive any reports of an increase in prostitution, human trafficking, or sexual exploitation of children in connection with the event, notwithstanding rumors to the contrary.

There was actually little discussion of Chapter 41A at the Council meeting. The only voice suggesting it might be applied to Plaintiff's expo was that of Council Member McGough. He advocated for its application–not as a means to address adverse secondary effects–but as a means to prohibit Plaintiff from presenting sexually explicit expression, which he found objectionable. Therefore, the predominate concern in applying to Chapter 41A to Plaintiff's expo is with the content of the expression; the purpose of its application is to suppress it. *Alameda Books*, 535 U.S at 445, 447. Application of Chapter 41A to Plaintiff's expo, therefore, must be reviewed under strict scrutiny. *Id.* at 434.

In order to pass constitutional muster, then, Defendants must show that application of Chapter 41A to Plaintiff's event "furthers a compelling interest and is narrowly tailored to achieve that interest" and allows for adequate alternative avenues of communication. *Reed*, 135 S.Ct. at 2231. They cannot, however, get past the first hurdle of showing that application of Dallas's ordinance regulating sexually oriented businesses to Plaintiff's three-day event furthers a compelling government interest. In fact, they cannot even clear intermediate scrutiny's lower rail of showing that a substantial governmental interest is furthered by the ordinance's application to Plaintiff's expo.

Plaintiff's expo is run like an ordinary trade show. It has exhibits, seminars, presentations, and contests. APP. (Doc. 11) at 20, PageID 150. While Defendants–none of whom had attended the expo–attempted to link it with obscenity, sex-trafficking, domestic violence, rape, and child abuse, there is not a jot of evidence supporting those far-fetched claims. Defendants' rhetoric is similar to that of Burbank's City Council decrying the evils of "hard rock music" in *Cinevision Corp. v. City of Burbank*, 745 F.2d 560 (9th Cir. 1984).

The only evidence in front of the Mayor and the Council demonstrated that Plaintiff's expo was a legal event, free of any criminal activity and adverse effects on the surrounding area, which was attended by thousands of people interested in the seminars, presentations, and entertainment at the expo. No compelling interest is furthered by applying Chapter 41A to Plaintiff's three-day expo.

Nor is banning Plaintiff's trade show from the convention center narrowly tailored to achieve an alleged interest in reducing the adverse secondary effects it claims are associated with Plaintiff's three-day event. Strict scrutiny requires a showing that a content-based regulation is the least restrictive means to address the asserted problem. *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 827 (2000). Here, there is no real problem to address. But even if there were, simple enforcement of criminal statutes and ordinances by the Dallas Police Department would effectively address them and stand as a far less restrictive means of regulation than shutting down Plaintiff's expo and silencing its expression. *See McCullen v. Coakley*, 134 S. Ct. 2518, 2537-38 (2014).

Moreover, as the City Attorney confirmed when questioned by Council, banning Plaintiff's expo from the Dallas convention center leaves no other venue available for the presentation of Plaintiff's expression, since Dallas has only one convention center and no other comparable venues where Plaintiff could present its expo. Application of Chapter 41A is unconstitutional for that reason

as well.[7]

Indeed, even under intermediate scrutiny, requiring the ordinance to further a substantial governmental interest without burdening substantially more speech than is necessary, while leaving adequate alternative avenues of communication, *Ward v. Rock Against Racism,* 491 U.S. 781, 799 (1989), the ordinance does not pass constitutional muster.

*Millennium Restaurants* is instructive.  In that case, the City of Dallas sought to revoke the license issued to an adult cabaret under Chapter 41A because four of its entertainers had been convicted of public lewdness on the premises. 191 F.Supp.2d at 804.The court analyzed the license revocation under the four-part test of *United States v. O'Brien,* 391 U.S. 367, 377 (1968) and determined that it violated the test's third and fourth prongs. *Id.* at 808.

With regard to the third prong requiring that the asserted governmental be unrelated to the suppression of free speech, the court found because Chapter 41A's procedures allowed revocation in the absence of any knowledge on the part of the license holder of the convictions, it was "constitutionally suspect" and did not further the government's interest "of assuring law abiding licensees." *Id.*

The court also found  the license revocation provisions were not narrowly tailored to achieve a substantial governmental interest. It wrote:

> Revocation of a business license based on two convictions of employees for public lewdness over a one year period, without requiring any knowledge on the part of management, is a greater restriction on free expression than is essential to furtherance of the governmental interest because the predicate offenses do not tend to show that management is careless, reckless, or incompetent.

---

[7] *See Southeastern Promotions*, 420 U.S. at 556 ("Whether petitioner might have used some other, privately owned, theater in the city for its production is of no consequence. There is reason to doubt on this record whether any other facility would have served as well as these since none apparently had the seating capacity, acoustical features, stage equipment, and electrical service the show required.").

*Id.* The court, therefore, concluded the "City's proposed revocation" of the Plaintiff's license "operates as an unconstitutional prior restraint on First Amendment rights." *Id.*

That same observation applies with equal–if not greater–force here. Defendants passed a resolution directing that the City Manager not enter into a contract with Plaintiff for use of the convention center. Period. They made no attempt to tailor restrictions to address their supposed concerns while allowing Plaintiff to hold its expo.  As in *Millenium Restaurants*, Defendants imposed an unconstitutional prior restraint on Plaintiff's First Amendment rights.

## CONCLUSION

Plaintiff's motion for a preliminary injunction should be granted.

/s/ Roger Albright
ROGER ALBRIGHT
(State Bar No. 009 745 80)
rogeralbright@gmail.com
LAW OFFICES OF ROGER ALBRIGHT
3301 Elm Street
Dallas, Texas 75226-2562
(214) 939-9222
(214) 939-9229 (Facsimile)

J. MICHAEL MURRAY
(Ohio Bar No. 0019626)
jmmurray@bgmdlaw.com
BERKMAN, GORDON, MURRAY & DeVAN
55 Public Square, Suite 2200
Cleveland, Ohio  44113-1949
(216) 781-5245
(216) 781-8207 (Facsimile)

Attorneys for Plaintiff

25

## CERTIFICATE OF SERVICE

A copy of the foregoing Plaintiff's Reply Brief was filed electronically on April 5, 2016.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.


/s/ Roger Albright
ROGER ALBRIGHT
(State Bar No. 009 745 80)
LAW OFFICES OF ROGER ALBRIGHT

J. MICHAEL MURRAY
(Ohio Bar No. 0019626)
BERKMAN, GORDON, MURRAY & DeVAN

Attorneys for Plaintiff