IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| Three Expo Events, L.L.C., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 3:16-CV-00513-D |
| City of Dallas, et al., | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

**BRIEF OF THE STATE OF TEXAS AND THE DALLAS CITIZENS COUNCIL AS *AMICI CURIAE* IN SUPPORT OF DEFENDANTS AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

Ken Paxton
Attorney General of Texas

Jeffrey C. Mateer
First Assistant Attorney General

Scott A. Keller
Solicitor General

Prerak Shah
Assistant Solicitor General
State Bar No. 24075053

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548
Austin, Texas 78711-2548
Telephone: (512) 936-1700
Facsimile: (512) 474-2697
prerak.shah@texasattorneygeneral.gov

*Counsel for State of Texas
as Amicus Curiae*

Robert C. Walters
State Bar No. 20820300

James C. Ho
State Bar No. 24052766

Rebekah Perry Ricketts
State Bar No. 24074883

William T. Thompson
State Bar No. 24088531

GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, Texas 75201-6911
Telephone: (214) 698-3100
Facsimile: (214) 698-3400
rwalters@gibsondunn.com
jho@gibsondunn.com
rricketts@gibsondunn.com
wtthompson@gibsondunn.com

*Counsel for Dallas Citizens Council
as Amicus Curiae*

## TABLE OF CONTENTS

Table of Contents ..................................................................................................ii

Table of Authorities ..............................................................................................iii

Interest of *Amici Curiae* ......................................................................................vi

Introduction ...........................................................................................................1

Argument ................................................................................................................2

    I.    Because the Convention Center Is a Commercial Enterprise Intended
to Promote Economic Development in Dallas, It Is a Nonpublic
Forum .........................................................................................................2

    II.   Resolution 160308 Does Not Violate the First Amendment
Regardless of How the Court Classifies the Convention Center .................8

        A.    The Resolution Is Viewpoint Neutral and Reasonable .....................8

        B.    The Resolution Is Content Neutral Under the Secondary
Effects Doctrine and Survives Intermediate Scrutiny .....................10

Conclusion .............................................................................................................15

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Calash v. City of Bridgeport,*
    788 F.2d 80 (2d Cir. 1986)................................................................................ 3

*Cinevision Corp. v. City of Burbank,*
    745 F.2d 560 (9th Cir. 1984) ..................................................................... 11-12

*City of Erie v. Pap's A.M.,*
    529 U.S. 277, 296 (2000)........................................................................... 12

*City of Los Angeles v. Alameda Books, Inc.,*
    535 U.S. 425 (2002).............................................................................. 1, 10

*Coleman v. Ann Arbor Transp. Auth.,*
    947 F. Supp. 2d 777 (E.D. Mich. 2013)....................................................... 9

*Cornelius v. NAACP Legal Def. & Educ'l Fund, Inc.,*
    473 U.S. 788 (1985)................................................................................ 1-9

*DiMa Corp. v. Town of Hallie,*
    185 F.3d 823 (7th Cir. 1999) ................................................................... 13

*Fantasy Ranch Inc. v. City of Arlington, Tex.,*
    459 F.3d 546 (5th Cir. 2006) ................................................................... 12

*In re G. & A. Books, Inc.,*
    770 F.2d 288 (2d Cir. 1985)..................................................................... 13

*Globe Newspaper Co. v. Sup. Ct. for Norfolk Cnty.,*
    457 U.S. 596 (1982)................................................................................ 14

*Hampton Int'l Commun's, Inc. v. Las Vegas Convention & Visitors Auth.,*
    913 F. Supp. 1402 (D. Nev. 1996)............................................................. 7

*Hawkins v. City & Cnty. of Denver,*
    170 F.3d 1281 (10th Cir. 1999) ................................................................ 7

*Hotel Emps. & Restaurant Emps. Union, Local 100 v. City of New York,*
    311 F.3d 534 (2d Cir. 2002)..................................................................... 9

# TABLE OF AUTHORITIES
## (cont'd)

**Page**

*Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*,
   505 U.S. 672 (1992)........................................................................ 4

*Int'l Soc'y for Krishna Consciousness v. Schrader*,
   461 F. Supp. 714 (N.D. Tex. 1978) ................................................ 8

*Justice for All v. Faulkner*,
   410 F.3d 760 (5th Cir. 2005) .......................................................... 3

*Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*,
   508 U.S. 384 (1993).......................................................................8-9

*Lehman v. City of Shaker Heights*,
   418 U.S. 298 (1974).......................................................................3-4

*Muir v. Ala. Educ'l Tel. Comm'n*,
   656 F.2d 1012 (5th Cir. 1981) ........................................................ 7

*Norfolk v. Cobo Hall Conference & Exhibition Ctr.*,
   543 F. Supp. 2d 701 (E.D. Mich. 2008)........................................... 7

*Norma Kristie, Inc. v. City of Oklahoma City*,
   572 F. Supp. 88 (W.D. Okla. 1983) ................................................ 6

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,
   460 U.S. 37 (1983)........................................................... 3, 10, 13

*Renton v. Playtime Theatres, Inc.*,
   475 U.S. 41 (1986)............................................................... 11, 15

*Schenck v. Pro-Choice Network of W. N.Y.*,
   519 U.S. 357 (1997)....................................................................... 13

*Southeastern Promotions, Ltd. v. Conrad*,
   420 U.S. 546 (1975).......................................................................7-8

*U.S. Postal Serv. v. Council of Greenburgh Civic Ass'ns*,
   453 U.S. 114 (1981).................................................................... 2, 6

*Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*,
   135 S. Ct. 2239 (2015)..............................................................1, 3-4, 8

**TABLE OF AUTHORITIES**
**(cont'd)**

**Page**

*Ward v. Rock Against Racism,*
    491 U.S. 781 (1989) ...................................................................................... 11

*Young v. Am. Mini Theatres, Inc.,*
    427 U.S. 50 (1976) ......................................................................................... 11

**Statutes**

Dallas City Code Chapter 41A ........................................................................ 12

**Other Authorities**

City of Dallas, Annual Budget for Fiscal Year 2015-2016,
    http://spwebext1.dallascityhall.com/_layouts/15/WopiFrame.aspx?sourc
    edoc=/Budget/adopted_1516/adopted-fy15-16-BudgetBook.pdf&action
    =default&DefaultItemOpen=1 (last visited Apr. 11, 2016) ........................ 4-5

Convention & Event Services: Enterprise Fund Overview (Feb. 1, 2016),
    http://dallascityhall.com/government/_layouts/15/WopiFrame.aspx?sour
    cedoc=/government/Council%20Meeting%20Documents/bfa_2_conven
    tion-and-event-services_020116.pdf&action=default&DefaultItem
    Open=1 (last visited Apr.11, 2016) ................................................................. 5

Hilton Hotels & Resorts, Hilton Anatole: Plan an Event,
    http://www3.hilton.com/en/hotels/texas/hilton-anatole-DFWANHH/
    event/index.html (last visited Apr. 12, 2016) ............................................... 14

Kay Bailey Hutchison Convention Center Dallas, Capacity & Floor Plans at
    4, 6, http://www.dallasconventioncenter.com/wp-content/uploads/2014/
    07/Modified-Floorplan-Booklet-kbh.pdf (last visited Apr. 12, 2016) ........ 14

Sheraton Dallas Hotel, Versatile Dallas Conference Rooms and Venues,
    http://www.sheratondallashotel.com/dallas-conference-rooms (last
    visited Apr. 12, 2016) ................................................................................... 14

## INTEREST OF *AMICI CURIAE*

Attorney General Ken Paxton, on behalf of the State of Texas, is committed to promoting economic development throughout the State.  Essential to that goal is ensuring that governmental entities can manage their commercial enterprises without onerous and unnecessary restrictions.

The Dallas Citizens Council is a nonprofit organization comprising business and civic leaders in the Dallas region.[1]  Its purpose is to provide leadership on public policy issues to improve the lives of Dallas citizens.  The Citizens Council is committed to the long-term vitality and prosperity of the City of Dallas and wants to ensure that the City is able to appropriately manage important economic assets like the Kay Bailey Hutchison Convention Center.

Because the Convention Center is a commercial enterprise that is intended to promote economic development in Dallas, *amici* believe that the Convention Center is a nonpublic forum that the City is free to reasonably manage under applicable law.  *Amici* hope to aid the Court in understanding how free speech doctrine accommodates the City's significant interests as proprietor of the Convention Center.

---

[1]  Neither *amici* nor counsel received any monetary contributions intended to fund preparing or submitting this brief.  No party's counsel authored this brief in whole or in part.

## INTRODUCTION

Plaintiff's motion for a preliminary injunction rests on two critical premises:  First, that the Kay Bailey Hutchison Convention Center (the "Convention Center") is a public forum rather than a commercial enterprise.  And second, that City Council Resolution 160308 (the "Resolution") is a content-based speech restriction.  Both are false.

First, the Convention Center is a nonpublic forum because the City—"acting as a proprietor," *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239, 2251 (2015)—manages the Convention Center as a commercial asset.  The Supreme Court has repeatedly recognized that government use of a property as a "commercial enterprise" is "inconsistent with an intent to designate the [property] as a public forum." *Cornelius v. NAACP Legal Def. & Educ'l Fund, Inc.*, 473 U.S. 788, 804 (1985).  Because the Convention Center is a commercial enterprise that is intended to promote economic development in Dallas, the Convention Center is a nonpublic forum.

Because the Convention Center is a nonpublic forum, the Resolution passes constitutional muster if it is both viewpoint neutral and reasonable.  The Resolution easily satisfies those requirements—and Plaintiff does not argue to the contrary.  But even if the Court decides to treat the Convention Center as a public forum, Plaintiff's motion is fatally flawed for a second reason:  The Resolution is content neutral, because it is targeted not at the content of Plaintiff's speech, but rather at the "secondary effects" of that speech on the surrounding community.  *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 434 (2002).  Because the Resolution is also narrowly tailored to serve significant government interests and leaves open ample alternative channels of

communication, it fully comports with the First Amendment.

Plaintiff ignores controlling precedent on both of these issues and is unlikely to succeed on the merits. The Court should therefore deny Plaintiff's motion for a preliminary injunction.

ARGUMENT

## I. Because the Convention Center Is a Commercial Enterprise Intended to Promote Economic Development in Dallas, It Is a Nonpublic Forum

1. It is well established that "the First Amendment does not guarantee access to property simply because it is owned or controlled by the government." *U.S. Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 130 (1981). Instead, "the extent to which the Government can control access" to a particular property "depends on the nature of the relevant forum." *Cornelius v. NAACP Legal Def. & Educ'l Fund, Inc.*, 473 U.S. 788, 800 (1985). The Supreme Court has "identified three types of fora: the traditional public forum, the public forum created by government designation, and the nonpublic forum." *Id.* at 802.

Traditional public fora—such as streets and public sidewalks—are "those places which by long tradition or by government fiat have been devoted to assembly and debate." *Id.* Designated public fora, on the other hand, are "created by government designation of a place or channel of communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain

2

subjects."[2]  *Id.*  Government intent is the touchstone of the inquiry for designated public fora.  *See id.* ("The government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse.").

By contrast, nonpublic fora include "[p]ublic property which is not by tradition or designation a forum for public communication."  *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983).  A nonpublic forum "exists where the government is acting as a proprietor, managing its internal operations."  *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239, 2251 (2015) (internal quotation marks and brackets omitted).  For example, the advertising space available in a city's public transportation system is a nonpublic forum because "the city is engaged in commerce" for the purpose of "provid[ing] rapid, convenient, pleasant, and inexpensive service to [its] commuters."  *Lehman v. City of Shaker Heights*, 418 U.S. 298, 303 (1974) (plurality).

2.    Plaintiff bears the burden to prove that the Convention Center is a public forum.  *See Perry*, 460 U.S. at 47; *Cornelius*, 473 U.S. at 804.  Here, Plaintiff cannot carry that burden.  The City, "acting as a proprietor," manages the Convention Center as a commercially useful asset.  *Walker*, 135 S. Ct. at 2251.  And the Supreme Court has repeatedly held that government "use of a property as a commercial enterprise [is]

---

[2]    A limited public forum is a particular type of designated public forum that is limited to a specified class of speakers or set of topics.  *See Justice for All v. Faulkner*, 410 F.3d 760, 765 (5th Cir. 2005); *Calash v. City of Bridgeport*, 788 F.2d 80, 84 (2d Cir. 1986).  *See infra* at 9 n.12.

3

inconsistent with an intent to designate the [property] as a public forum." *Cornelius*, 473 U.S. at 804 (describing *Lehman*, 418 U.S. at 303-04); *see also Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 682 (1992) ("As commercial enterprises, airports must provide services attractive to the marketplace.  In light of this, it cannot fairly be said that an airport terminal has as a principal purpose promoting 'the free exchange of ideas.'").

Publicly available documents demonstrate that the Convention Center is a commercial enterprise intended to promote economic development and revenue generation for the City.  The City's annual budget, for example, lists the Convention Center under "Key Focus Area 2: Economic Vibrancy"—not "Key Focus Area 4: Culture, Arts, Recreation and Education."[3]  The budget describes the Convention Center as "one of the region's most powerful economic engines" that "effectively generates dollars that reduce the burden to local taxpayers" and "create region-wide jobs and economic benefits."[4]  Similarly, the City department that oversees the Convention Center "serve[s] as an economic engine for the City of Dallas, through efficient management, marketing and promotion of the [Convention Center]."[5]  These facts demonstrate that the City "is acting as a proprietor, managing its internal operations" when it manages the Convention Center.  *Walker*, 135 S. Ct. at 2251.

---

[3]   City of Dallas, Annual Budget for Fiscal Year 2015-2016 at 334, 337, http://spwebext1.dallascityhall.com/_layouts/15/WopiFrame.aspx?sourcedoc=/Budget/adopted_1516/adopted-fy15-16-BudgetBook.pdf&action=default&DefaultItemOpen=1 (last visited Apr. 12, 2016).

[4]   *Id.* at 254.

[5]   *Id.* at 251.

4

Moreover, when the City Council considers the Convention Center's annual budget, it evaluates economic results, such as return on investment, not aggregate effects on public discourse.  The 2015-2016 budget calculates a "return on City Investment" in the Convention Center with "Economic Impact" of \$10-\$13 per \$1 spent by the City.[6]  A separate City analysis calculates the economic impact of the Convention Center as \$662 million in 2014, \$699 million in 2015, and \$762 million in 2016.[7]  When the City recently spent \$60 million on capital improvements for the Convention Center, it did so in order to "[i]ncrease competitiveness," "[c]omplement the hotel development," "[b]etter serve customer requirements," and "[a]ddress capital needs."[8]  Thus, the City's maintenance and management of the Convention Center are for the purpose of fueling economic growth.  Plaintiff has pointed to no evidence that the City intends to use the Convention Center for "public discourse."  *Cornelius*, 473 U.S. at 802.

Speech does, of course, take place at the Convention Center.  But the mere fact "[t]hat such [expressive] activity occurs in the context of the forum created does not imply that the forum thereby becomes a public forum for First Amendment purposes." *Id.* at 805.  Because the City "did not create [the Convention Center] for purposes of providing a forum for expressive activity," the presence of speech "does not imply that the forum thereby becomes a public form for First Amendment purposes."  *Id.*; *see also*

---

[6]  *Id.* at 254.

[7]  Convention & Event Services: Enterprise Fund Overview (Feb. 1, 2016) at 11, http://dallascityhall.com/government/_layouts/15/WopiFrame.aspx?sourcedoc=/government/ Council%20Meeting%20Documents/bfa_2_convention-and-event-services_020116.pdf& action=default&DefaultItemOpen=1 (last visited Apr.12, 2016).

[8]  *Id.* at 21.

5

*Council of Greenburgh Civic Ass'ns*, 453 U.S. at 130 n.6 (criticizing Justice Brennan's dissent for "assum[ing] that simply because an instrumentality 'is used for the communication of ideas or information,' it thereby becomes a public forum").  Instead, that speech is simply the byproduct of the commercial enterprise.

3.     Plaintiff summarily asserts that the Convention Center is a public forum because it is "public property which government 'has opened for use as a place for expressive activity.'"  Pl.'s Am. Mem. 7.  That language is from the Supreme Court's decision in *Cornelius*, which in context clearly requires that the property be managed with the intent of supporting expressive activity.  *See Cornelius*, 473 U.S. at 804 ("[T]he city's use of the property as a commercial enterprise [is] inconsistent with an intent to designate the [property] as a public forum.").

Rather than discussing the City's intent in creating and managing the Convention Center, Plaintiff instead supplies a list of statistics regarding the size of the Convention Center.  Pl.'s Am. Mem. 7.  But the fact that the Convention Center offers "2,000,000 Total Square Feet," "1,000,000 Square Feet of Exhibit Space," "88 Meeting Rooms," and a "1,750 Seat Theater" has nothing to do with the public forum analysis.  *Id.*  If anything, these facts simply underscore the scale of the City's commercial investment in the Convention Center.

Plaintiff relies on a 1983 district court decision—*Norma Kristie, Inc. v. City of Oklahoma City*, 572 F. Supp. 88, 91 (W.D. Okla. 1983)—holding that a convention center in Oklahoma City was a public forum.  But the nature of a particular forum is a highly fact-intensive inquiry.  In other cases, courts have found municipal convention

centers and similar venues to be nonpublic fora.  *See, e.g.*, *Hawkins v. City & Cnty. of Denver*, 170 F.3d 1281, 1284, 1287-88 (10th Cir. 1999) (Galleria within the Denver Performing Arts Complex was nonpublic forum); *Norfolk v. Cobo Hall Conference & Exhibition Ctr.*, 543 F. Supp. 2d 701, 708 (E.D. Mich. 2008) ("Cobo Center is a nonpublic forum for the purpose of tomorrow's event."); *Hampton Int'l Commun's, Inc. v. Las Vegas Convention & Visitors Auth.*, 913 F. Supp. 1402, 1410 (D. Nev. 1996) ("[S]ome aspects of the Las Vegas Convention Center, which was built for the primary purpose of attracting large conventions and increasing the economic activity of Las Vegas and Clark County, are non-public in nature. . . .  Plaintiff has not proffered sufficient facts to show that the walkway areas here are a public forum.").[9]

As this authority demonstrates, there is no *per se* rule for municipal convention centers.  Instead, each case requires an individualized analysis of the government's intent in creating and managing the forum at issue.  *See Cornelius*, 473 U.S. at 802.  In this case, the relevant facts demonstrate that the Convention Center is a nonpublic forum.

---

[9]  Citing *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 555 (1975), Plaintiff also asserts that the Convention Center "was designed for and dedicated to expressive activities." Pl.'s Am. Mem. 6. Of course, *Southeastern Promotions* does not purport to announce a bright-line rule for convention centers or municipal buildings generally. The Court in that case evaluated Chattanooga's municipal auditorium, which was designed for "civic, educational religious, patriotic and charitable organizations and associations [to] have a common meeting place to discuss and further the upbuilding and general welfare of the city." *Se. Promotions*, 420 U.S. at 549 n.4. The Dallas Convention Center has no similar mandate. Moreover, Chattanooga's auditorium—unlike the Dallas Convention Center— could "not be operated for profit, and no effort to obtain financial returns above the actual operating expenses [was] permitted." *Id.*; *see also Muir v. Ala. Educ'l Tel. Comm'n*, 656 F.2d 1012, 1021 (5th Cir. 1981) (distinguishing *Southeastern Promotions*).

## II. Resolution 160308 Does Not Violate the First Amendment Regardless of How the Court Classifies the Convention Center

Because the Convention Center is a nonpublic forum, the Resolution at issue passes constitutional muster as long as it is viewpoint neutral and reasonable. The Resolution satisfies those requirements—indeed, Plaintiff does not argue otherwise. But even if the Court concludes that the Convention Center is a designated public forum, it should still deny Plaintiff's motion. As a content-neutral regulation that is narrowly tailored to achieve significant government interests, the Resolution comports with the First Amendment.

### A. The Resolution Is Viewpoint Neutral and Reasonable

The test for restrictions in nonpublic fora is lenient: "Control over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral.'" *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 392-93 (1993). The Resolution amply satisfies both of those requirements.[10]

First, Plaintiff's motion for a preliminary injunction does not assert that the Resolution constitutes viewpoint discrimination. The term "viewpoint discrimination"

---

[10] In reply, Plaintiff cites *Int'l Soc'y for Krishna Consciousness v. Schrader*, 461 F. Supp. 714, 717 (N.D. Tex. 1978), for the proposition that, "No one would seriously urge that a city can legally engage in 'content-based discrimination' in renting its municipal auditorium." Pl.'s Reply Br. 2. But this dictum rests on the premise that the Convention Center was a public forum for rental purposes. Again, the commercial purpose behind the City's operation of the Convention Center is "inconsistent with an intent to designate the [Convention Center] as a public forum." *Cornelius*, 473 U.S. at 804. *Schrader* did not consider that issue because it pre-dated seminal Supreme Court decisions such as *Cornelius* and *Walker*. It instead relied on *Southeastern Promotions*, which is readily distinguishable from this case. *See supra* at 7 n.9.

8

appears only once—buried in a lengthy block quotation—in Plaintiff's brief.  Pl.'s Am. Mem. 9.  In any event, the City has ably demonstrated that the Resolution is viewpoint-neutral.  *See* Defs.' Resp. 44-46.

Second, Plaintiff cannot show that the Resolution is unreasonable.  "The Government's decision to restrict access to a nonpublic forum need only be *reasonable*; it need not be the most reasonable or the only reasonable limitation."  *Cornelius*, 473 U.S. at 808.  It is of course reasonable for the City to refuse to contract with Plaintiff after the crime, fraud, and breach of contract that attended its previous transaction.  *See* Defs.' Resp. 1-13.  Moreover, it is perfectly reasonable for the City to conclude that Plaintiff's proposed event would not sufficiently advance the purposes for which the Convention Center was established: economic development and revenue generation.[11]

Because the Resolution is both viewpoint neutral and "reasonable in light of the purpose served by the forum," *Lamb's Chapel*, 508 U.S. at 392-93, it survives constitutional scrutiny.[12]

---

[11]  To the extent that the City changed its mind about contracting with Plaintiff, that does not alter the reasonableness analysis.  Public forum doctrine permits changes in municipal policy—even those that occur mid-litigation—as long as the changes are not viewpoint based.  *See, e.g.*, *Coleman v. Ann Arbor Transp. Auth.*, 947 F. Supp. 2d 777, 785-86 (E.D. Mich. 2013) (approving a new municipal policy that changed the forum from designated to nonpublic, repealed an unconstitutional rule that had restricted the plaintiff's access, and created a new rule that still restricted the plaintiff's access).

[12]  The same analysis would hold if the Court were to treat the Convention Center as a limited public forum.  *See Hotel Emps. & Restaurant Emps. Union, Local 100 v. City of New York*, 311 F.3d 534, 553 (2d Cir. 2002) ("government restrictions on expressive uses not falling within the limited category for which a limited public forum has been opened are subject to the same level of scrutiny as restrictions in non-public fora").  Because Plaintiff's proposed convention would not promote the City's long-term economic goals, Plaintiff is outside of the class to which the limited public forum would apply.

**B.**     **The Resolution Is Content Neutral Under the Secondary Effects Doctrine and Survives Intermediate Scrutiny**

For the reasons explained above, *see* Section I, the Convention Center is a nonpublic forum.  But even if the Court disagrees, Plaintiff is still unlikely to prevail on the merits.  That is because the Resolution (1) is content neutral under the secondary effects doctrine, (2) is narrowly tailored to serve a significant government interest, and (3) leaves open adequate alternative channels of communication.  *See Perry*, 460 U.S. at 45 ("The state may also enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.").  Plaintiff does not address, much less rebut, any of those three points.

1.     On its face, the Resolution is content neutral.  As the City demonstrates, "[t]he operative part of the resolution . . . makes no reference to any subject matter whatsoever."  Defs.' Resp. 43.  Instead, the Resolution's text reveals that it is a content-neutral time, place, or manner restriction.  "[T]he City Council directs the City Manager to not enter into a contract with Three Expo Events, LLC, for the lease of the Dallas Convention Center."  Pl.'s App. 1.  Far from banning all adult speech, the Resolution merely precludes Plaintiff from hosting its event at the Convention Center.

Plaintiff alleges that the Mayor and City Council were motivated by the content of the proposed event.  Pl.'s Am. Mem. 11.  But in the adult speech context, a regulation is deemed content neutral if it targets the secondary effects of such speech.  *See City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 434 (2002) (explaining that a regulation

10

that applied to adult theaters, but not other theaters, "was deemed content neutral" because it "was aimed not at the content of the films shown at adult theaters, but rather at the secondary effects of such theaters on the surrounding community").[13]

Although the secondary-effects doctrine was originally developed in zoning cases, it also applies to public-forum analysis. *See, e.g.*, *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (applying the secondary effects doctrine in a public-forum case). Thus, Plaintiff cannot prove that the Resolution was content based simply by showing that the City might have been willing to host a different convention. Such a fact—even if proven—does not suffice to make a decision "content based" for purposes of the public-forum inquiry.

Plaintiff's argument that the Resolution is content based ignores the doctrine of secondary effects. Indeed, Plaintiff appears to assert that the City cannot refuse to host proposed events based on concerns about crime. Pl.'s Am. Mem. 9-10 (quoting *Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 572 (9th Cir. 1984) ("[A] general fear that state or local narcotics or other laws will be broken by people attending the concerts cannot justify a content-based restriction on expression.")). *Cinevision*, however, predates the seminal case on secondary effects—*Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986)—and thus cannot inform this Court's content-neutrality analysis.

---

[13]   That courts defer when cities attempt to avoid the negative effects of adult speech makes perfect sense, given the "lesser[] magnitude" of society's interest in protecting that speech. *Young v. Am. Mini Theatres, Inc.*, 427 U.S. 50, 71 (1976) (plurality) ("[E]ven though we recognize that the First Amendment will not tolerate the total suppression of erotic materials that have some arguably artistic value, it is manifest that society's interest in protecting this type of expression is of a wholly different, and lesser, magnitude than the interest in untrammeled political debate that inspired Voltaire's immortal comment.").

Moreover, *Cinevision* rests on a far different record.  In that case, the fear of crime at hard rock concerts was "general" and "undifferentiated."  *Cinevision*, 745 F.2d at 572. Here, by contrast, specific acts of public lewdness at last year's event justify a specific fear that the same crime will recur.  Defs.' Resp. 7-8.  Avoiding public lewdness at and around the Convention Center is particularly important because the Convention Center "is in close proximity to residences, public parks, and a church," Defs.' Resp. 14, areas where children are more likely to be present.[14]

Beyond crime, however, there are other secondary effects that support the Resolution.  Again, the purpose of the Convention Center is to serve as an economic engine and raise revenue.  Because this requires attracting both new businesses and visitors to the City, prudence requires that the City take account of considerations that might reduce the likelihood that new businesses and visitors would choose to come to Dallas.  It is reasonable for the City to fear that the Convention Center's (and therefore the City government's) continued association with Plaintiff would dissuade some potential visitors from coming to the Convention Center or Dallas generally.  This type of

---

[14]  Plaintiff complains that certain City Council members explained their votes with reference to the content of the proposed event.  Pl.'s Am. Mem. 12.  But it conveniently ignores that the City Council principally focused on Plaintiff's status under Dallas City Code Chapter 41A as a sexually oriented business that should be regulated to prevent secondary effects.  *See, e.g.*, Defs.' Resp. 14.  In addition, public nudity, such as that at Plaintiffs' previous convention, is not constitutionally protected.  *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 296 (2000) (plurality) ("The asserted interests of regulating conduct through a public nudity ban and of combating the harmful secondary effects associated with nude dancing are undeniably important"); *id.* at 307-08 (Scalia, J., concurring); Defs.' Resp. 9.  In any event, Plaintiff's "focus on the City Council's pre-enactment rationale is misplaced."  *Fantasy Ranch Inc. v. City of Arlington, Tex.*, 459 F.3d 546, 560 (5th Cir. 2006).  The "appropriate focus is not an empirical enquiry into the actual intent of the enacting legislature, but rather the existence or not of a *current governmental interest* in the service of which the challenged application of the statute may be constitutional."  *Id.* (internal quotation marks and brackets omitted).

brand management, which sacrifices short-term benefits in order to secure long-term gains, is essential for a commercial venture like the Convention Center.

Plaintiff makes much of the Mayor calling himself Dallas's "chief brand officer" and expressing concern that hosting Plaintiff's proposed event would harm the City's brand.  Pl.'s Am. Mem. 4.  Far from proving content discrimination, Plaintiff's evidence actually highlights the Mayor's appropriate concern for adverse effects on the City's economic development and revenue generation.

2.    The Resolution is also "narrowly tailored to serve a significant government interest"—the standard commonly known as intermediate scrutiny.  *Perry*, 460 U.S. at 45.  Indeed, it is particularly telling that Plaintiff makes no argument that the Resolution fails that standard.  *See* Pl.'s Am. Mem. 12-14 (arguing only that the Resolution fails strict scrutiny).

Both the prevention of crime and the promotion of the City's economic interests in the Convention Center are significant government interests.  *See Schenck v. Pro-Choice Network of W. N.Y.*, 519 U.S. 357, 376 (1997) (describing the "significant governmental interest in public safety"); *DiMa Corp. v. Town of Hallie*, 185 F.3d 823, 829 (7th Cir. 1999) (preventing "the spread of crime" is a "significant government interest"); *In re G. & A. Books, Inc.*, 770 F.2d 288, 296-97 (2d Cir. 1985) ("substantial governmental interests" include "increas[ing] tax revenue," "rais[ing] employment in the area," and "reduc[ing] crime").

The Resolution is narrowly tailored to serve these interests.  Rather than pass a broad ordinance that would restrict more speech than necessary, the City Council has

13

exercised its discretion on a case-by-case basis to refuse to host Plaintiff's event in the Convention Center.  It is hard to imagine a more narrowly tailored approach.  *See Globe Newspaper Co. v. Sup. Ct. for Norfolk Cnty.*, 457 U.S. 596, 609 (1982) (holding that a statutory *per se* rule "cannot be viewed as a narrowly tailored means of accommodating the State's asserted interest" because "[t]hat interest could be served just as well by requiring the trial court to determine [the issue] on a case-by-case basis").

3.    Plaintiff similarly does not challenge the adequacy of alternative channels of communication.  The City has demonstrated that sexually oriented businesses have ample opportunity to engage in adult speech in Dallas.  Defs.' Resp. 38-40.  Moreover, there are many large venues in Dallas that are capable of hosting conventions—and the Resolution does nothing to prevent Plaintiff from holding its event elsewhere in Dallas. The Hilton Anatole, for example, offers more than half a million square feet of event space, "including 11 ballrooms and 79 meeting rooms."[15]  Similarly, the Sheraton Dallas Hotel offers more than 230,000 square feet of ballrooms, board rooms, and entertainment suites.[16]  These two venues (and perhaps others) offer substantially more space than Plaintiff used at the Convention Center in 2015.[17]

---

[15]  Hilton Hotels & Resorts, Hilton Anatole: Plan an Event, http://www3.hilton.com/en/ hotels/texas/hilton-anatole-DFWANHH/event/index.html (last visited Apr. 12, 2016).

[16]  Sheraton Dallas Hotel, Versatile Dallas Conference Rooms and Venues, http://www.sheraton dallashotel.com/dallas-conference-rooms (last visited Apr. 12, 2016).

[17]  Plaintiff previously contracted for "Meeting Rooms A200s and A300s" and "Exhibit Halls A and B."  Pl.'s App. 101.  According to the Convention Center's "Capacity & Floor Plans" publication, that amounts to 200,310 square feet of exhibit-hall space, plus an additional 15,630 square feet of meeting-room space.  Kay Bailey Hutchison Convention Center Dallas, Capacity & Floor Plans at 4, 6, http://www.dallasconventioncenter.com/wp-content/uploads/

Whether Plaintiff would be able to successfully bargain for space at another venue is beside the point. "That [Plaintiff] must fend for [itself] in the real estate market, on an equal footing with other prospective purchasers and lessees, does not give rise to a First Amendment violation." *Renton*, 475 U.S. at 54 (rejecting arguments based on the practical difficulty of obtaining land left available by a city zoning ordinance).

## CONCLUSION

By passing the Resolution, the City of Dallas exercised its right as proprietor to control access to the Convention Center. Because doing so did not violate the First Amendment, the Court should deny Plaintiff's motion for a preliminary injunction.

---

2014/07/Modified-Floorplan-Booklet-kbh.pdf (last visited Apr. 12, 2016) (providing square footage for each exhibit hall and meeting room).

Dated:  April 14, 2016

Respectfully submitted,

*Robert C. Walters*

Ken Paxton
Attorney General of Texas

Robert C. Walters
State Bar No. 20820300

Jeffrey C. Mateer
First Assistant Attorney General

James C. Ho
State Bar No. 24052766

Scott A. Keller
Solicitor General

Rebekah Perry Ricketts
State Bar No. 24074883

/s/ *Prerak Shah*
Prerak Shah
Assistant Solicitor General
State Bar No. 24075053

William T. Thompson
State Bar No. 24088531

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548
Austin, Texas 78711-2548
Telephone:  (512) 936-1700
Facsimile:  (512) 474-2697
prerak.shah@texasattorneygeneral.gov

GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, Texas  75201-6911
Telephone:  (214) 698-3100
Facsimile:  (214) 698-3400
rwalters@gibsondunn.com
jho@gibsondunn.com
rricketts@gibsondunn.com
wtthompson@gibsondunn.com

*Counsel for State of Texas*
*as Amicus Curiae*

*Counsel for Dallas Citizens Council*
*as Amicus Curiae*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on April 14, 2016, the foregoing document was served via electronic filing on all counsel of record in this case.


/s/ *Robert C. Walters*

Robert C. Walters