IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THREE EXPO EVENTS, L.L.C.,           §
                                     §
              Plaintiff,             §
                                     §   Civil Action No. 3:16-CV-0513-D
VS.                                  §
                                     §
CITY OF DALLAS, TEXAS,               §
                                     §
              Defendant.             §

MEMORANDUM OPINION
AND ORDER

Defendant City of Dallas, Texas (the "City") moves under Fed. R. Civ. P. 12(b)(1) to dismiss this civil action by plaintiff Three Expo Events, L.L.C. ("Three Expo") for lack of standing. Three Expo opposes the City's motion and moves for leave to file a second amended complaint after the court-ordered deadline. For the reasons that follow, the court denies Three Expo's motion, grants the City's motion, and dismisses this lawsuit without prejudice for lack of standing.

I

Because this case is the subject of a prior memorandum opinion and order, *see Three Expo Events, L.L.C. v. City of Dallas, Tex.*, 182 F.Supp.3d 614 (N.D. Tex. 2016) (Fitzwater, J.) ("*Three Expo I*"), the court will recount only the background facts and procedural history that are pertinent to this decision.

Three Expo is an event promoter that, along with its affiliates, has for the past decade staged conventions throughout the country "with erotic, but non-obscene messages." Am.

Compl. ¶ 1. In a declaration filed early in this case, Three Expo's director, Jeffrey Handy ("Handy"), explained that

> [i]t is the standard business practice for Three Expo Events, L.L.C. to be the underlying management company for the various conventions conducted throughout the country while a separate ownership entity (e.g., Exotica Miami, Exotica Chicago or Exotica Dallas) is created to own the particular event.

P. 3/23/17 Br. 4 (quoting P. 3/23/17 App. 16). During Three Expo's Rule 30(b)(6) deposition, Handy testified that Three Expo "never enters into contracts with convention centers or local facilities in any location for any of the events," and that it "never intends to at all in the future." D. 3/3/17 App. 45.

In January 2015, Handy, on behalf of an entity named "Exotica Texas, LLC,"[1] entered into a contract with the City ("2015 Contract") for a for a three-day exposition called "Exxxotica," to take place at the City's Kay Bailey Hutchison Convention Center ("Convention Center") in August 2015. The event took place as scheduled. Shortly afterward, Handy advised the Convention Center that he wanted to schedule a similar convention for 2016. Convention Center staff provided Handy several tentative dates for 2016, Handy indicated that his preferred dates were May 20-22, 2016, and he asked to be penciled in for those dates. On January 19, 2016 the Convention Center advised Three Expo

---

[1]Three Expo maintains that Handy later discovered that he had mistakenly provided the name "Exotica Texas, LLC" as the entity that would own the 2015 Exxxotica expo, when he instead should have executed the contract on behalf of an entity named "Exotica Dallas, LLC" According to Three Expo, the properly named entity—Exotica Dallas, LLC—later ratified the 2015 Contract.

that it was still working on getting a contract together for the Exxxotica event to be held in May. On February 10, 2016, however, the Dallas City Council ("City Council") passed Resolution No. 160308 (the "Resolution"), which provides:

> WHEREAS, Three Expo Events, LLC requests to contract with the City to hold a three-day adult entertainment expo at the Dallas Convention Center; Now, Therefore,
>
> BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF DALLAS:
>
> Section 1. That the City Council directs the City Manager to not enter into a contract *with Three Expo Events, LLC*, for the lease of the Dallas Convention Center.
>
> Section 2. That this resolution shall take effect immediately from and after its passage in accordance with the provisions of the Charter of the City of Dallas, and it is accordingly so resolved.

Compl. Ex. 1 (bold font omitted; emphasis added).

On February 24, 2016 Three Expo filed this lawsuit against the City.[2] In its amended complaint, Three Expo brings claims under 42 U.S.C. § 1983, alleging that the City violated Three Expo's free speech rights under the First and Fourteenth Amendments, that the City violated Three Expo's equal protection rights under the Fourteenth Amendment, and that the Resolution is an unconstitutional bill of attainder. Three Expo seeks damages and an injunction that, *inter alia*, would prohibit the City from enforcing the Resolution against

---

[2]Although Three Expo initially sued not only the City but various city officials in their official capacities, Three Expo names only the City as a defendant in its amended complaint.

Three Expo and direct the City "to enter into a contract with [Three Expo] for the planned 2016 convention." Am. Compl. at 19-20.

After denying Three Expo's motion for a preliminary injunction, *see Three Expo I*, 182 F.Supp.3d at 633, the court entered a scheduling order ("Scheduling Order") that set June 13, 2016 as the deadline for filing motions for leave to amend pleadings. On January 11, 2017 Three Expo moved for partial summary judgment on liability, declaratory judgment, and injunctive relief. The City moved for summary judgment on March 3, 2017.[3] That same day, the City filed a motion to dismiss Three Expo's amended complaint under Rule 12(b)(1), contending that Three Expo lacks standing to sue the City. Three Expo opposes the City's motions. It also filed, on March 22, 2017, an opposed motion for leave to file a second amended complaint that would add Exotica Dallas, L.L.C. ("Exotica Dallas") as a plaintiff.

## II

The court first considers the City's motion to dismiss under Rule 12(b)(1) for lack of standing.

## A

"[T]he requirement that a claimant have 'standing is an essential and unchanging part of the case-or-controversy requirement of Article III.'" *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Standing "involves both constitutional limitations on federal-court jurisdiction and prudential

---

[3]Briefing on the pending summary judgment motions is complete, but the court is not reaching the motions because Three Expo lacks standing.

limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

It is well-settled that "the irreducible constitutional minimum of standing contains three elements." *Lujan*, 504 U.S. at 560. These elements are (1) an injury-in-fact that is concrete and actual or imminent, not hypothetical; (2) a fairly traceable causal link between the injury and the defendant's actions; and (3) that the injury will likely be redressed by a favorable decision. *See, e.g., Bennett v. Spear*, 520 U.S. 154, 167 (1997); *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009). To obtain injunctive relief, a plaintiff must be "likely to suffer future injury." *City of L.A. v. Lyons*, 461 U.S. 95, 105 (1983). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief[.]" *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974). The threat of future injury to the plaintiff "must be both real and immediate, not conjectural or hypothetical." *Lyons*, 461 U.S. at 102 (quotation marks omitted).

Prudential standing, by contrast, does not emanate from the Constitution, and it instead "embodies 'judicially self-imposed limits on the exercise of federal jurisdiction.'" *Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 474 (5th Cir. 2013) (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004)). The doctrine asks

> whether a plaintiff's grievance arguably falls within the zone of interests protected by the statutory provision invoked in the suit, whether the complaint raises abstract questions or a generalized grievance more properly addressed by the legislative branch, and whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties.

*Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 363 (5th Cir. 1999).

B

When challenging subject matter jurisdiction under Rule 12(b)(1), a party can make a facial attack or a factual attack. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981). If the party merely files its Rule 12(b)(1) motion, it is considered a facial attack, and the court looks only at the sufficiency of the allegations in the pleading and assumes them to be true. *Id.* If the allegations are sufficient to allege jurisdiction, the court must deny the motion. *Id.* This is akin to a Rule 12(b)(6) motion in that the "pleading's allegations are presumed to be true, and '[i]f those allegations sufficiently allege a claim for recovery the complaint stands and the federal court must entertain the suit.'" *Vinmar Overseas, Ltd. v. OceanConnect, LLC*, 2012 WL 3599486, at *4 (S.D. Tex. Aug. 20, 2012) (quoting *Jones v. SuperMedia Inc.*, 281 F.R.D. 282, 286 (N.D. Tex. 2012) (Boyle, J.)).

A party can also make a factual attack on subject matter jurisdiction by submitting evidence, such as affidavits or testimony. *IBEW-NECA Sw. Health & Benefit Fund v. Winstel*, 2006 WL 954010, at *1 (N.D. Tex. Apr. 12, 2006) (Fitzwater, J.) (citing *Paterson*, 644 F.2d at 523). "A factual attack on the subject matter jurisdiction of the court . . . challenges the facts on which jurisdiction depends and matters outside of the pleadings, such as affidavits and testimony, are considered." *Vinmar Overseas*, 2012 WL 3599486, at *4 (quoting *Oaxaca v. Roscoe*, 641 F.2d 386, 391 (5th Cir. Unit A 1981)). The "court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. May 1981). "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts

will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* The plaintiff in a factual challenge, as the party seeking to invoke jurisdiction, must "submit facts through some evidentiary method and . . . prov[e] by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Paterson*, 644 F.2d at 523. The court classifies the City's motion as a factual challenge.

## III

The court begins by addressing the City's contention that Three Expo lacks constitutional standing.

## A

The City contends that Three Expo lacks standing to assert its First Amendment or equal protection claims. Regarding the first element—injury-in-fact—the City maintains that Three Expo has not suffered a concrete and particularized or actual or imminent injury. According to the City, although the Resolution prohibits Convention Center staff from entering into a contract *with Three Expo*, Three Expo admits that it has never intended, and never will intend, to enter into a contract with the City. The City posits that, because the Resolution prohibits an action that Three Expo does not intend to perform at any time in the future, it does not injure Three Expo.[4]

Regarding the second element—traceability—the City contends that because Three

_____

[4]Regarding Three Expo's bill of attainder claim, the City contends that, because Three Expo never intends to enter into a contract with the City, a prohibition against its doing so cannot constitute punishment, as is required for this claim.

Expo "did not suffer an injury, there can be no causal connection between any injury and [the Resolution]. Plaintiff never sought, and will never seek, a contract with the City, so a Resolution barring future contracts cannot serve as a causal link to establish standing." D. 3/3/17 Br. 9.

The City maintains that Three Expo cannot satisfy the third element—redressability—because, even if the court granted the injunctive relief that Three Expo requests (i.e., an injunction ordering the City to enter into a contract with Three Expo to allow Exotica Dallas to operate an Exxxotica event at the Convention Center), this relief would not redress Three Expo's alleged injuries. This is so, the City contends, because Three Expo has no intention of entering into a contract with the City.[5] Three Expo responds that, because it produced, managed, and derived revenues from the expo at the Convention Center,[6] its First Amendment rights were directly and unambiguously at stake when the City

_____

[5]The City also contends:

> [i]f the Court were to enter an injunction requiring the City to enter into a contract with Plaintiff, the evidence demonstrates that Plaintiff would refuse to enter into such a contract. It would, instead, propose a contract in the name of some other separate legal entity, presumably Exotica Dallas, L.L.C. As a result, it is speculative and unlikely that Plaintiff's alleged injury will be redressed by a favorable decision of this Court.

D. 3/3/17 Br. 10.

[6]In support of its contention that it produced, managed, and derived revenue from the Exxxotica convention, Three Expo cites the following evidence: it entered into a "Management and Services Agreement" ("Management Agreement") with Exotica Dallas "to produce and manage the expo at the [Convention Center]," P. 3/23/17 Br. 4; pursuant to

Council adopted the Resolution; that "Three Expo's own First Amendment rights of freedom of speech have been violated by the Resolution banning its 'adult entertainment expo at the Dallas Convention Center,'" P. 3/23/17 Br. 9; that the Resolution imposes a prior restraint on the constitutionally protected expression Three Expo would otherwise produce and present at another expo at the Convention Center; that the Resolution constitutes an unconstitutional bill of attainder punishing Three Expo as the producer of the expo; that Three Expo has been denied equal protection of the law by the Resolution and the City's conduct, treating it differently from every other applicant who seeks to use the Convention Center; and that the City's unconstitutional action has caused Three Expo to suffer economic damages. In response to the City's contention that Three Expo admitted that it has never intended, and never will intend, to enter into a contract to lease space at the Convention Center, Three Expo contends, citing the March 21, 2017 declaration of Patrick Perrino

---

the Management Agreement, Exotica Dallas engaged Three Expo to provide operational, management, and administrative support services for the show in Dallas; also pursuant to the Management Agreement, Exotica Dallas appointed Three Expo to be its authorized agent, with the authority "to be a party to any agreement with respect to, or otherwise deal with, any of the business and government contracts of [Exotica Dallas] for all purposes," *id.* at 5; under Exhibit A to the Management Agreement, Three Expo was expected to perform various particular services; Patrick Perrino ("Perrino"), Handy's business partner and an attorney who oversaw Three Expo's incorporation, explained during his deposition that Three Expo and its Exotica affiliates were organized to protect Three Expo's intellectual property rights in the Exxxotica trademark, but that the income from the individual entities flows upwards to Three Expo, the management company; the Resolution identifies Three Expo as its target, and, in fact, Three Expo made the initial payment of $14,040.00 to reserve the Convention Center for its 2015 event; Three Expo was one of the named insureds on the Certificate of Insurance Coverage required by the Convention Center; and Three Expo was the entity that submitted the Request for Proposal in connection with the 2015 event.

("Perrino"), Handy's business partner and an attorney who oversaw Three Expo's incorporation, that

> Three Expo stands fully ready, able, and willing to serve, not only as producer of the next expo at the Convention Center, but also as the contracting party with the Convention Center. The fact that its preference would be for its affiliated entity to enter into the lease, does not alter the undeniable fact that Three Expo itself can be and is willing to be the contracting party.

*Id.* at 10.

The City argues in its reply that the Resolution prohibits only Three Expo, not Exotica Dallas, from leasing space at the Convention Center; that Three Expo (a Texas limited liability company) and Exotica Dallas (a Delaware limited liability company) are separate legal entities with distinct purposes, and that they even contract with one another; and that Three Expo did not own Exxxotica Dallas 2015, has never owned an Exxxotica event anywhere in the country, and testified that it would never enter into a contract for an Exxxotica event. In sum, the City maintains that

> [Three Expo], based on its own clear, unequivocal deposition testimony, *never* intends to, and never will enter into a contract for any Exxxotica event. For this reason, [the Resolution] did not cause [Three Expo] to suffer an injury in fact as to any of its claims against the City. Additionally, this means that there is no causal connection between any injury and damages and that Plaintiff has no redressable injuries.

D. 4/12/17 Reply 5-6 (bold font omitted). The City maintains that it is immaterial that Three Expo produced, managed, and derived revenue from Exxxotica Dallas 2015 because the Resolution prohibits a contract that Three Expo was and is unwilling to enter into, so Three

Expo's First Amendment rights are not at stake in this litigation. Finally, the City objects to, and moves to strike, what it characterizes as Perrino's "sham" declaration, contending that Three Expo's deposition testimony was clear and that no additional context is required; that Perrino's statement that Three Expo has the ability and the authority to enter into a contract with the City is inapposite because Three Expo did not testify that it could not enter into lease contracts for Exxxotica expos, but that it *never will* do so; that although Handy indicated during Three Expo's Rule 30(b)(6) deposition that Perrino would have more knowledge as to various topics, Handy did not do so in connection with his unequivocal testimony that Three Expo never has and never will enter into contracts with a convention center; and Perrino's deposition testimony concurs with Handy's clear testimony.

## B

The court holds that Three Expo lacks constitutional standing in this case. To establish standing to raise a First Amendment challenge, "a plaintiff must produce evidence of 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute.'" *Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 545 (5th Cir. 2008) (quoting *Speaks v. Kruse*, 445 F.3d 396, 399 (5th Cir. 2006)); *see also Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott*, 647 F.3d 202, 209 (5th Cir. 2011) (holding there was no standing where plaintiffs "have not offered any evidence to show that they intend to hire professional resellers to engage in activity covered by the" challenged statutory provisions, and holding insufficient the assertion that they are "seriously interested" in operating under those provisions). "Specifically, plaintiff[] must demonstrate a 'serious[]

interest[]' in acting contrary to a statute." *Barbour*, 529 F.3d at 545 n.8 (second and third alteration in original) (quoting *Int'l Soc'y for Krishna Consciousness v. Eaves*, 601 F.2d 809, 818 (5th Cir. 1979)). Because Three Expo never intended to enter into a contract with the City for any Exxxotica event, the Resolution did not threaten *imminent* harm. *Lujan*, 504 U.S. at 560, 564.

The Resolution clearly and unambiguously directs the City Manager "to not enter into a contract with *Three Expo Events, LLC*, for the lease of the Dallas Convention Center." Compl. Ex. 1 (emphasis added). It does *not* prohibit the City Manager from entering into a contract with any other entity, including Exotica Dallas. Three Expo admits in its written discovery responses and in deposition testimony that it has never entered into a contract with any city for any Exxxotica event and that it has no intention of doing so in the future. Consistent with this evidence, it was Exotica Dallas,[7] not Three Expo, that entered into the 2015 Contract. In fact, when the City sent Handy an early draft of the 2015 Contract listing Three Expo as the "User," Handy responded: "We definitely need the contract written to Exotica Texas, LLC. In the last email exchange I thought you were just keeping it under 3XE on your end, which is fine, but legally Exotica Texas, LLC is the company contracting the space. Three Expo Events is just hired to produce them." D. 3/3/17 App. 19. According to the record, in the absence of the Resolution and this ensuing lawsuit, Exotica Dallas—not

_____

[7]As explained above, Exotica Texas, LLC is actually the entity that entered into the 2015 Contract. According to Three Expo, once Handy realized that he had mistakenly executed the contract on behalf of Exotica Texas, LLC (a nonexistent entity) rather than Exotica Dallas, Exotica Dallas ratified the 2015 Contract.

Three Expo—is the entity that would have owned any future Exxxotica events held in Dallas, including the 2016 Exxxotica expo, and Exotica Dallas is the entity that would have contracted with the City to lease the Convention Center for any such events. Because Three Expo has expressly stated that it had no intention of ever entering into a contract with the City for any Exxxotica event, the court concludes that Three Expo did not suffer an injury in fact that is actual or imminent as a result of the Resolution's prohibiting the City Manager from entering into a contract with it. *See Lujan*, 504 U.S. at 560, 564. Nor has Three Expo pleaded a basis to satisfy the remaining elements of standing: a causal link between the injury and the Resolution, and an injury that will likely be redressed by a favorable decision.

Three Expo maintains that, because it "produced, managed, and derived revenues from the expo at the" Convention Center, its "First Amendment rights were, therefore, directly and unambiguously at stake when [the City] Council adopted [the] Resolution." P. 3/23/17 Br. 7; *see also id.* at 9 ("Three Expo's own First Amendment rights of freedom of speech have been violated by the Resolution banning its 'adult entertainment expo at the Dallas Convention Center.'"). The court disagrees. Nothing in the Resolution prevents Three Expo from producing, managing, or deriving revenue from any expo at the Convention Center, including an Exxxotica expo, provided the City Manager contracts with a party other than Three Expo. And although the Resolution *describes* a "three-day adult entertainment expo," it does not, as Three Expo argues, "ban[]" the event itself. *Id.* The Resolution does not prohibit the City Manager from doing exactly what Three Expo had planned all along: entering into a contract with Exotica Dallas for lease of the Convention Center for the 2016

-13-

Exxxotica expo. Had that occurred (i.e., had a contract between the City and Exotica Dallas been entered into for lease of the Convention Center), Three Expo could have contracted with Exotica Dallas to produce, manage, and derive revenue without running afoul of the Resolution. In sum, the only injuries Three Expo alleges are those resulting from the nonoccurrence of the 2016 Exxxotica expo. But Three Expo has failed to show that it was the Resolution that prevented the 2016 Exxxotica event from occurring.[8]

---

[8]Neither Exotica Dallas nor Three Expo, acting as Exotica Dallas' authorized agent, attempted to contract with the City Manager for lease of the Convention Center after the Resolution was passed. Three Expo maintains that it would have been futile to do so. *See* P. 3/23/17 Br. 2 ("It's important to be clear about Dallas's argument. Dallas does *not* contend that it would have or is willing to enter into an agreement with Plaintiff's affiliate, Exotica Dallas, LLC, for use of the Convention Center for the adult entertainment expo. Surely, it would not."). A plaintiff can be excused from the requirement that, to establish standing to challenge an allegedly unconstitutional policy, the plaintiff must submit to the challenged policy, if the plaintiff "makes a 'substantial showing'" that doing so "would have been futile." *Ellison v. Connor*, 153 F.3d 247, 255 (5th Cir. 1998) (quoting *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir. 1997)). But Three Expo has not made this showing. Nothing in the Resolution prohibits the City Manager from entering into a contract with Exotica Dallas, even if executed by Three Expo as Exotica Dallas' authorized agent, and to find that any such effort would be futile would require the court to speculate. As the City states in its reply:

> First, as Plaintiff is not Exotica Dallas, L.L.C. it would not matter whether the City would enter into a contract with Exotica Dallas, L.L.C. Second, the City is unaware that Exotica Dallas, L.L.C. has *ever* requested to lease convention center space. Third, the City has *never* denied Exotica Dallas, L.L.C. a contract for convention center space. This should not be read to mean that the City would enter into such a contract, but simply that the City has not denied a request by Exotica Dallas, L.L.C. Fourth, as Exotica Dallas, L.L.C. has never requested, nor been denied, a contract, Plaintiff's argument is simply speculation, and constitutional standing must be based on more than speculation.

Finally, Three Expo relies on Perrino's March 31, 2017 declaration to argue that it

> stands fully ready, able, and willing to serve, not only as
> producer of the next expo at the Convention Center, but also as
> the contracting party with the Convention Center. The fact that
> its preference would be for its affiliated entity to enter into the
> lease, does not alter the undeniable fact that Three Expo itself
> can be and is willing to be the contracting party.

P. 3/23/17 Br. 10. As a preliminary matter, the court notes, as did the City in its reply, that

having the *ability* and the *authority* to enter into a contract with the City is different from

having the *intent* to do so. *See, e.g., Barbour*, 529 F.3d at 546 ("Without concrete plans or

any objective evidence to demonstrate a 'serious interest' in a closed primary, [plaintiff]

suffered no threat of *imminent* injury," required for Article III standing. (citing *Lujan*, 504

U.S. at 560)). Moreover, to the extent that Perrino's declaration contradicts Three Expo's

earlier testimony that it "never enters into contracts with convention centers or local facilities

in any location for any of the events" and "never intends to at all in the future," D. 3/3/17

App. 45, Three Expo has at most created a disputed issue of fact. It has not established by

a preponderance of the evidence that Three Expo (on its own behalf or as an agent of Exotica

Dallas) actually intended to, or currently intends to, enter into a contract with the City to

───────────────

D. 4/12/17 Reply 8 n.9.

       Moreover, to the extent Three Expo seeks injunctive relief regarding Exxxotica events
to be held in the future, City Council elections were held on May 6, 2017, and the court can
take judicial notice that at least one City Council member who voted for the Resolution is no
longer on the City Council. *See infra* note 12. It is entirely possible that the current City
Council could vote differently if faced with the question whether to permit the City Manager
to enter into a contract with Exotica Dallas to lease the Convention Center for an adult
entertainment expo.

lease the Convention Center for any future Exxxotica event.[9] *See Barbour*, 529 F.3d at 545-46; *Nat'l Fed'n of the Blind of Tex., Inc.*, 647 F.3d at 209. Accordingly, despite the assertion in Perrino's deposition that Three Expo is ready, able, and willing to enter into a contract with the City, the court finds that Three Expo had no intent to ever enter into a contract with the City to lease the Convention Center, and Three Expo therefore lacks constitutional standing to bring this lawsuit against the City.[10]

IV

Three Expo moves for leave to file a second amended complaint that would add Exotica Dallas as a plaintiff to this lawsuit.

A

Rule 16(b)(4) governs a party's request to take an action after the court-ordered deadline for doing so. *See, e.g., Cartier v. Egana of Switz. (Am.) Corp.*, 2009 WL 614820, at *2 (N.D. Tex. Mar. 11, 2009) (Fitzwater, C.J.). To take such an action, it is necessary to modify the scheduling order. And to modify the scheduling order, the party seeking this relief must demonstrate good cause and obtain the judge's consent. *Id.* The good cause standard "require[s] the movant 'to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *Puig v. Citibank, N.A.*, 514 Fed. Appx.

---

[9]Because the court is granting the City's motion to dismiss, it denies as moot the City's motion to strike portions of Perrino's declaration.

[10]Because the court concludes that Three Expo lacks constitutional standing, it does not address whether the amended complaint is also subject to dismissal on the ground that Three Expo lacks prudential standing.

483, 487-88 (5th Cir. 2013) (per curiam) (quoting *S & W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 535 (5th Cir. 2003)). "In determining whether the movant has met its burden under Rule 16(b)(4), the court considers four factors: (1) the party's explanation, (2) the importance of the requested relief, (3) potential prejudice in granting the relief, and (4) the availability of a continuance to cure such prejudice." *Cartier*, 2009 WL 614820, at *3 (citing *S & W Enters.*, 315 F.3d at 536). The court considers the four factors holistically and "does not mechanically count the number of factors that favor each side." *EEOC v. Serv. Temps., Inc.*, 2009 WL 3294863, at *3 (N.D. Tex. Oct. 13, 2009) (Fitzwater, C.J.), *aff'd*, 679 F.3d 323 (5th Cir. 2012).

B

Three Expo does not address the Rule 16(b)(4) good cause standard in its motion for leave to amend, and it only addresses, in any detail, the first and third factors in its reply. "When a party . . . does not address the good cause standard under Rule 16(b)(4), this court typically denies the motion for that reason alone." *Wachovia Bank, Nat'l Ass'n v. Schlegel*, 2010 WL 2671316, at *3 (N.D. Tex. June 30, 2010) (Fitzwater, C.J.) (citing *Serv. Temps*, 2009 WL 3294863, at *1) (addressing motions for leave to amend). But the court has made exceptions in cases where the movant does not address the Rule 16(b)(4) good cause standard, but the grounds on which it relies to establish good cause are relatively clear. *See, e.g., Atl. Cas. Ins. Co. v. PrimeLending, A PlainsCapital Co.*, 2016 WL 7386208, at *2 (N.D. Tex. Dec. 21, 2016) (Fitzwater, J.) ("First Choice has not briefed the good cause factors in its amended motion, but the grounds on which it relies enable the court to apply the pertinent

four-factor test."); *Nieves v. John Bean Techs. Corp.*, 2014 WL 2587577, at *2 (N.D. Tex. June 10, 2014) (Fitzwater, C.J.) ("Nieves neither identifies the correct standard nor cites Rule 16(b)(4) in her brief, but the grounds on which she relies enable the court to apply the pertinent four-factor test."); *Cartier*, 2009 WL 614820, at *2 ("Cartier does not brief its motion under the Rule 16(b)(4) good cause standard or related case law, but the grounds on which it relies to establish good cause are relatively clear."). Accordingly, because the grounds on which Three Expo relies enable the court to apply the pertinent four-factor test, the court will consider on the present briefing whether Three Expo has met the good cause standard of Rule 16(b)(4) to amend the scheduling order.

C

1

The court first considers Three Expo's explanation for failing to timely file its motion for leave to file a second amended complaint. Three Expo contends that, despite its diligence, it had no reason to anticipate that the City would assert for the first time in its March 3, 2017 motion to dismiss that Three Expo lacked standing considering that it was not the entity that usually entered into a lease with the City. Three Expo maintains that "[h]ad Defendant raised a standing issue [in March 2016] on the basis of the distinction between [Three] Expo and Exotica Dallas, L.L.C.[,] Plaintiff, although it believes Defendant's standing argument lacks merit, could have also elected to file an amended complaint within the parameters of the Scheduling Order." P. 4/26/17 Reply 5. In essence, Three Expo attempts to justify its untimely decision to add Exotica Dallas as a plaintiff based on the

City's delay in moving to dismiss. In response, the City argues, *inter alia*, that Three Expo was "well aware, before its initiation of this lawsuit, of its role and the role of local Exotica limited liability companies in Exxxotica events." D. 4/12/17 Br. 8.

Three Expo's explanation for failing to timely file a motion for leave to file a second amended complaint is unpersuasive. Given the essential and unchanging role that standing plays, every plaintiff who brings suit in federal court knows that it must establish that it has standing. Three Expo should have known this before it ever filed suit. And it certainly knew before the Scheduling Order's June 13, 2016 deadline for seeking leave to add parties that Exotica Dallas was the owner and contracting party for the 2015 Exxxotica expo and that Exotica Dallas would be the owner and contracting party for any future Exxxotica events held in Dallas. Three Expo has failed to establish that, despite its diligence, it could not have sought leave to add Exotica Dallas as a party by the court-ordered deadline. The City's successful 12(b)(1) motion to dismiss—which, itself, is timely under the federal rules[11] and the court's Scheduling Order—is not a satisfactory explanation for Three Expo's delay. Accordingly, this factor weighs against permitting Three Expo to file a second amended

---

[11]Rule 12(h)(3) provides in substance that an absence of subject matter jurisdiction can be raised at any time. *Hoskins v. Kaufman Indep. Sch. Dist.*, 2003 WL 22078234, at *1 (N.D. Tex. Sept. 4, 2003) (Fitzwater, J.); *see also Huddleston v. Nelson Bunker Hunt Tr. Estate*, 109 B.R. 197, 201 (N.D. Tex. 1989) (Fitzwater, J.) ("It is axiomatic that an alleged lack of subject matter jurisdiction may be raised at any time by a party or by the court *sua sponte*."). The assertion that Three Expo lacks standing clearly relates to the court's subject matter jurisdiction. *See Hunter v. Branch Banking & Tr. Co.*, 2013 WL 607151, at *1 (N.D. Tex. Feb. 19, 2013) (Fitzwater, C.J.) ("It is well settled that 'the issue of standing is one of subject matter jurisdiction.'" (quoting *Cobb v. Cent. States*, 461 F.3d 632, 635 (5th Cir. 2006)).

complaint.

2

The court next considers the importance of the requested relief. Three Expo contends that the proposed amendment is important because it affects Three Expo's ability "to add a party/claim upon which it will be able to recover *assuming arguendo* that the position taken by the City in its Motion to Dismiss . . . is valid." P. 4/26/17 Reply 9. The City contends that the relief Three Expo requests is not important because adding Exotica Dallas as a party to this lawsuit would be futile.

The court concludes that the amendment is not important. Although granting leave to amend would enable Three Expo to add Exotica Dallas—the entity expected to own the Dallas Exxxotica expo—as a plaintiff, the Resolution applies only to Three Expo. And Exotica Dallas would encounter its own problems establishing standing. For example, there is no indication that Exotica Dallas has ever attempted to enter into a contract with the City and been precluded from doing so based on the Resolution. So as it now stands, granting leave to amend would leave two plaintiffs in the case, neither of whom could establish constitutional standing.[12] Accordingly, the court concludes that this factor weighs against

---

[12]Although it is possible that, if Exotica Dallas attempts to enter into a contract with the City Manager to lease the Convention Center for an Exxxotica event, the City Manager will refuse to do so, or the City Council will pass another resolution prohibiting him from doing so, neither of these potential outcomes has occurred. Moreover, the Resolution was passed by a vote of eight to seven. The court can take judicial notice that, of the eight City Council members who voted for the Resolution, at least one, Carolyn King Arnold, was not reelected at the May 6, 2017 election. Two others who voted for the Resolution, Tiffinni Young and Erik Wilson, will compete in the run-off election scheduled for June 2017, and

granting the requested relief.

3

The court will consider together the third factor—the potential prejudice to the City in allowing the amendment—and the fourth factor—the availability of a continuance to cure such prejudice.

The City contends that it will be significantly prejudiced by the amendment for the following reasons: the City has already filed motions to dismiss and for summary judgment, and allowing Three Expo to add Exotica Dallas at this late juncture would render the intended relief sought by the City in its dispositive motions meaningless and moot because, even if the City were to fully prevail against Three Expo, Exotica Dallas would remain as a party; the analysis of and defenses to Exotica Dallas' claims would be different from those applicable to Three Expo because of the different roles that the entities carried out with regard to Exxxotica Dallas 2015, and that they would presumably carry out for proposed future Exxxotica Dallas events, and because the Resolution only applies to Three Expo; the damages sought by Three Expo and Exotica Dallas would be different in kind, justification, and amount; if the amendment were allowed, the City would be unable to file a motion for summary judgment against Exotica Dallas under the Scheduling Order; Three Expo seeks to add a new party after the discovery deadline has expired, and, although the City already

it is yet to be determined whether they will be reelected.  To conclude that the current City Council would vote as did the City Council that passed the Resolution requires speculation. Accordingly, not only does Exotica Dallas currently lack standing to bring suit based on the Resolution, it is not clear that it will ever have standing.

sought information and materials regarding Exotica Dallas, it would have conducted additional discovery focused specifically on Exotica Dallas had it been named a party; and with trial fewer than two months away, the City would be faced with the prospect of defending itself against a party from whom the City had not been permitted to obtain deposition testimony or sworn responses to interrogatories. Regarding the fourth factor, the City contends that, because trial is set for June 12, 2017, no continuance is available under the current Scheduling Order that would allow for the requested amendment and also allow the City time for additional discovery.

Three Expo responds that the City will not be prejudiced by the amendment because, to the extent Three Expo has already filed its dispositive motions, the parties can agree (or the court can order) that the City's previously-filed motions be fully applicable against Exotica Dallas, and through Three Expo's responses to either the City's previously submitted interrogatories or requests for production, or through deposition testimony, Exotica Dallas has already fully responded considering that the discovery was directed not merely to Three Expo but also to its affiliates, such as Exotica Dallas.

The court concludes that the City would be prejudiced if the court allowed Three Expo to add Exotica Dallas as a party to this lawsuit after the City had already filed its motion for summary judgment. This court has frequently found prejudice when a party seeks leave to amend after the opposing party has filed a motion for summary judgment. *See, e.g., Home Depot U.S.A., Inc. v. Nat'l Fire Ins. Co. of Hartford*, 2007 WL 2592353, at *3 (N.D. Tex. Sept. 10, 2007) (Fitzwater, J.) (denying motion for leave to amend after summary judgment

motion filed); *AMS Staff Leasing, NA, Ltd. v. Associated Contract Truckmen, Inc.*, 2005 WL 3148284, at *11 (N.D. Tex. Nov. 21, 2005) (Fitzwater, J.) (same).  And, as the Fifth Circuit has recognized, "'[t]o grant . . . leave to amend is potentially to undermine [a party's] right to prevail on a motion that necessarily was prepared without reference to an unanticipated amended complaint. . . . A party should not, without adequate grounds, be permitted to avoid summary judgment by the expedient of amending its complaint.'"  *Overseas Inns S.A. P.A. v. United States*, 911 F.2d 1146, 1151 (5th Cir. 1990) (quoting this court's opinion below), *aff'g*, 685 F.Supp. 968 (N.D. Tex. 1988) (Fitzwater, J.).  Although the parties certainly *could* agree that the arguments in the already-filed dispositive motions would apply with equal force to Exotica Dallas, Exotica Dallas is a different legal entity with a different role with respect to the proposed Exxxotica Dallas events, and any new argument that the City intends to make that would be targeted specifically at Exotica Dallas will have to be raised in a new dispositive motion (either under Rule 12 or Rule 56).  Additionally, notwithstanding Three Expo's argument that it has already provided the City with discovery regarding Exotica Dallas, the addition of Exotica Dallas as a party will necessitate additional discovery to the extent the City intends to explore legal theories that apply only to Exotica Dallas or that apply differently based on Exotica Dallas' status as a party as opposed to an affiliated entity. Given the proximity to the June 12, 2017 trial setting, a new scheduling order allowing discovery and a new round of dispositive motion briefing would undoubtedly require that the trial be continued.  And a trial continuance will only exacerbate the potential for prejudice considering that discovery has already closed and the City has filed and fully briefed two

pending dispositive motions.  *See Choice Hotels Int'l, Inc. v. Goldmark Hospitality, LLC*, 2014 WL 80722, at *4 (N.D. Tex. Jan. 9, 2014) (Fitzwater, C.J.) (noting that continuance could exacerbate potential for prejudice after party has filed summary judgment motion at close of discovery).  The third and fourth factors therefore weigh against a finding of good cause.

4

Considering the four factors holistically, the court concludes that Three Expo has failed to show good cause to modify the scheduling order.  Three Expo's explanation for its delay in seeking to add Exotica Dallas as a party is unpersuasive; adding Exotica Dallas as a party would likely be futile considering Exotica Dallas' own lack of constitutional standing; and amending the Scheduling Order would prejudice the City in ways that a continuance would exacerbate rather than cure.  The court therefore finds that Three Expo has not demonstrated good cause to amend the scheduling order, and it therefore denies Three Expo's motion for leave to file a second amended complaint.

\* \* \*

Accordingly, for the reasons explained, the court denies the City's motion to strike portions of the declaration of Perrino; denies Three Expo's motion for leave to file second amended complaint; and grants the City's motion to dismiss the amended complaint under

Rule 12(b)(1) for lack of standing. The court therefore dismisses this lawsuit without prejudice.

**SO ORDERED**.

May 11, 2017.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE